Storv, Justice,
delivered the opinion of the court; and after stating the case, proceeded as follows : — Such is the general outline of the case ; and in the progress of the investigation, it may become necessary to advert to some other facts with more particularity.
And the first question arising upon this posture of the case is, whether *194 Strode, the trustee, by the sale to Yeitoh, has been guilty of any breach of trust. And this seems to the court to be scarcely capable of controversy. That there are circumstances in the case, which raise a presumption of bad faith on the part of the trustee, and expose him to some suspicion, cannot escape observation. But assuming him to have acted with *entire good faith, his proceedings were a plain departure from his duty. In respect to the supposed exchange of the Fauquier for the Frederick lands, it is impossible for a moment to admit its validity. In the first place, it was not made between parties competent to make it. Wormley had no authority over the estate, after the marriage-settlement. The chief object of that settlement was, to secure the property to the use of the wife and children, during the joint lives of the husband and wife. And though it is said, in another part of the deed, that Wormley shall occupy and enjoy the estate, and the issues and profits thereof, during his life, yet this was to be, under,leave of the trustee ; and to suppose that he thus acquired an equitable interest for life, is to defeat the manifest and direct intention of the other clauses in the deed, which avow the whole object to be, the security of the estate, during the same period, for the use of the wife and children. The true and natural construction of this clause is, that it points to the discretion which the trustee may exercise, as to allowing the husband to occupy the estate, and take the profits, for the maintenance of the family, whenever the trustee perceives it may be safely done, without involving the trustee in any responsibility, to which he might be exposed, by such a permission, without such an authority. But at all events, the right to dispose of the equitable fee to any one, much less to the trustee himself; did not exist in Wormley ; and any exchange attempted to be made by him, however benefi-c*a*’ wou^ have been utterly void. But no *exehange was, in fact, consummated. It is true, that the removal to the Fauquier lands took place, upon an agreement to this effect; but no definitive conveyance was ever made; and the trustee himself never settled, and never took a step towards settling, the Fauquier estate upon the trusts of the marriage-settlement, as it was his indispensable duty to do, if he meant to conduct himself correctly. As to the substituted Kentucky lands, the transaction was still more delusive. The agreement for the substitution was merely conditional, depending upon the subsequent election of Wormley, and his dissent put an end to it. As to the conveyance- to Lee, ostensibly for the trusts of the settlement, it can be viewed in no other light than an attempt to cover up the most unjustifiable proceedings. That conveyance was not executed, until after the dissent and dissatisfaction of Wormley were well known ; and so far from its containing any valid performance of the trusts, it expressly gives a prior lien to the purchasers of the Frederick lands, as security for their covenant of warranty ; and to complete the delusion, the trustee reserved to himself the authority to substitute any other lands, leaving the trusts to float along, without fixing them definitively upon any solid foundation. If we add, that the Fauquier lands were mortgaged to the purchasers for the same covenant; and that this mortgage was discharged only for the purpose of selling the property to Grimmar and Mun-dell, we shall come irresistibly to the conclusion, that the trustee never was ™ a sitaati011 *t0 g^e an unincumbered title on either the Fauquier or Kentucky lands, to secure the trusts ; and that if he was, he never, *195 in fact, executed any conveyance for this purpose. In every view, therefore, of this part of the case, it is clear, that no valid exchange did, or could take place; and that as there was no equitable or legal transmutation of the property from the eestuis que trust, it remained in the trustee, clothed with all the oi’iginal fiduciary interests.
But independent of these considerations, there is a stubborn rule of equity, founded upon the most solid reasoning, and supported by public policy, which forbade any such exchange. No rule is better settled, than that a trustee cannot become a purchaser of the trust estate. He cannot be at once vendor and vendee. He cannot represent in himself two opposite and conflicting interests. As vendor, he must always desire to sell as high, and as purchaser, to buy as low, as possible ; and the law has wisely prohibited any person from assuming such dangerous and incompatible characters. If there be any exceptions to the generality of the rule, they are not such as can affect the present case. On the contrary, if there be any cogency in the rule itself, this is a strong case for its application ; for, by the very terms of the settlement, the trustee was invested with a large discretion, and a peculiar and exclusive confidence was placed in his judgment. Of necessity, therefore, it was contemplated, that his judgment should be free and impartial, and unbiassed by personal interests. The asserted *exchange, so far at least as it affects to justify or confirm the proceedings of the trustee, may, therefore, be at once laid out of the question.
Then, was the sale to Veitch a breach of trust? The power given to the trustee by the settlement, is certainly very broad and unusual in its terms ; but it is not unlimited. The trustee had not an unrestricted authority to sell, but only when, in his opinion, the purchase-money might be laid out advantageously for the eestuis que trust. It is true, the sale and re-investment are to be decided by his opinion ; which is an invisible operation of the mind. But his acts, nevertheless, are subject to the scrutiny of the law ; and if that opinion has not been fairly and honestly exercised, if it has been swayed by private interests and selfish objects, if the sale has been at a price utterly disproportionate to the real value of the property, and the evidence demonstrate such facts, a court of equity will not sanction an act which thus becomes a fraud upon innocent parties.
Much ingenuity has been exercised, in a critical examination of the nature of the power itself, as it stands in the text of the settlement. It is contended, that the acts of sale, and of re-investment, are separate and distinct acts, and the power to sell is, therefore, to be disjoined from that of re-purchase, so that the sale may be good, though the purchase-money should be misapplied. How far a bond fide purchaser is bound, in a case like the present, to look to the application of the purchase-money, need not be decided in this case. There is much reason in the doctrine, that where the *trust is defined in its object, and the purchase-money is to be re-invested upon trusts which require time and discretion, or the acts of sale and re-investment are manifestly contemplated to be at a distance from each other, the purchaser shall not be bound to look to the application of the purchase-money ; for the trustee is clothed with a discretion in the management of the trust fund, and if any persons are to suffer by his misconduct, it should be rather those who have reposed confidence, than those *196 who have bought under an apparently authorized act. But in the present case, it seems difficult to separate the acts from each other. The sale is not to be made, unless a re-investment can, in the opinion of the trustee, be advantageously made. He is not to sell upon mere general speculation, but for the purpose of direct re-investment. And it is very difficult to perceive, how the trustee could arrive at the conclusion, that it was proper to sell, unless he had, at the same time, fixed on some definite re-investment, ■which, compared with the former estate, would be advantageous to the parties. Although, therefore, the acts of sale and purchase, are to be distinct, they are connected with each other ; and, at least, as to the trustee, there cannot be an exercise of opinion, such as the trust contemplated, unless he had viewed them in connection. If he should sell, without having any settled intention to buy, leaving that to be governed by future events, he would certainly violate the confidence reposed to him. A fortiori, if he should se^’ an intention, not to re-invest, but to speculate, for the *purpose of relieving his own necessities, or of appropriating the trust fund indefinitely to his own uses.
Now, in point of fact, what has the trustee done in this case ? He has sold the trust property, to pay his own debts. He has never applied the proceeds to any re-investment. To this very hour, there has been no just and fair application of the purchase-money. The Fauquier lands are gone, the Kentucky lands have been rejected, and are loaded with liens ; and there is nothing left but the personal responsibility of the trustee, embarrassed and distressed as he must be taken to be, unless the trusts are still fastened to ■the Frederick lands. Can it then be contended for a moment, that there is no breach of trust, when the sale was not for the purposes of re-investment ? When the party puts his-right to sell, not upon an honest exercise of opinion, at the time of sale, but upon a distinct anterior transaction, invalid and incomplete, by which he became clothed with the beneficial interest of the estate ? When he claims to be, not the disinterested trustee, selling the estate, but the trustee purchasing, by exchange, the trust fund, and thus entitled to deal with it according to his own discretion, and for his own private accommodation, as absolute owner? Where the purchase-money is to be applied to extinguish his own debts ; and there is no proof of his means to replenish, or acquire an equal sum from other sources ? In the judgment of the court, the sale was a manifest breach of trust. It was, no Pr0Per sense, an execution of the power. The power, *in the contemplation of the trustee, was virtually extinguished. He sold, not because he intended an advantageous re-investment; but because he considered himself the real owner of the estate. The very letter, as well as the spirit of the power, was, therefore, violated ; for the trustee never exercised an opinion upon that, which was the sole object of the power to sell, an advantageous re-investment.
The next point for consideration is, whether the defendants, Yeitch, and Castleman and M'Cormick were bond fide purchasers of the Frederick lands, without notice of the breach of trust. If they had notice of the facts, they are necessarily affected with notice of the law operating upon those facts ; and their general denial of all knowledge of fraud, will not help them, if, in point of law, the transaction is repudicated by a court of equity. *197 If they were bond fide purchasers, without notice, their title might have required a very different consideration.
And first, as to Yeitch. The deed to him contained a recital of the marriage-settlement, and the power authorizing the sale. He, therefore, had direct and positive notice of the title of the trustee to the property. There is the strongest reason to believe, that he was fully cognisant of the exchange of the Frederick and Fauquier lands, negotiated between Wormley and the trustee. The certificate from Wormley, respecting the exchange, and expressing satisfaction with it, which was procured a few days before the sale, and which Yeitch now produces, shows that he *must have had a knowledge of the exchange. Its apparent object was, to ascertain the state of the title. The removal of the Wormley family, and their known residence, at this time, on the Fauquier lands, strengthen this presumption. If he knew of the exchange, he could not but know, that he purchased of the trustee an estate, which he claimed as his own, in a bargain with an unauthorized person, and that the trustee was, at the same time, the vendor and purchaser. He also knew, that the sale to himself was not in execution of the power, or for the purpose of re-investment ; for according to the other facts, the exchange had already effected that, and no further re-investment was contemplated. He took a mortgage, as additional security, for the warranty, on the sale of the Fauquier lands, not even now alleging, that he did not know their identity. And under these circumstances, he could not but know, that there had been no actual conveyance or declaration of trust of the Fauquier lands, in execution of the trust, for, otherwise, the trustee could not have mortgaged them to him. He, therefore, stood by, taking a conveyance from the trustee of the trust estate, knowing, at the same time, that no re-investment had been made, which could be effectual, and that no re-investment was contemplated as the object of the sale ; and, so far as his mortgage could go, he meant to obtain a priority of security, that should ride over any future declaration of trust.
This is not all. The very sale of the trust fund was to be, not for re-investment, but to pay a large *debt due to himself, upon which a decree of foreclosure of a mortgaged estate had been obtained ; and he could not be ignorant, that the application of the trust fund to such a purpose, was a violation of the settlement, and afforded a strong presumption, that the trustee had no other adequate means of discharging the debt, or of buying other lands advantageously in the market. And yet, with notice of all these facts, the deed itself, from the trustee to Yeitch, contains a recital, that the sale was made “ with the intention of investing the proceeds of such sale in other lands, of equal or greater value.” This was utterly untrue, and could not escape the attention of the parties. Yeitch then had full knowledge of all the material facts, and he does not even deny it in his answer ; for that only denies the inference of fraud, which is a mere conclusion of law from the facts, as they are established. Purchasing, then, with a full knowledge of the rights of Mrs. Wormley and her children, and of the breach of trust, Yeitch cannot now claim shelter in a court of equity, as a bond fide purchaser for a valuable consideration.
The next question is, whether Castleman and M‘Cormick are not in the same predicament. In the judgment of the court, they clearly are. They purchased from Yeitch, whose deed gave them full notice of the trust, and *198 they could not be ignorant of the recital in it, since their title referred them to it. They must have perceived, that the sale to Veitch, in order to be valid, must have been with a view to re-investment of the purchase-money **n ot^er real estate. It was natural for them to inquire, whether the sale had been made under justifiable circumstances, and whether there had been any such re-investment. Previous to the sale to Veitch, they had entered into a negotiation with the trustee himself, for a direct purchase of the Frederick lands ; and on that occasion, became acquainted with the fact, that the trustee was largely indebted to Veitch, and that one object of the sale was, to apply the proceeds to the payment of that debt. How then could they be ignorant, that the proceeds of the sale, which was very soon afterwards made to Veitch, were to be applied to extinguish the same debt, and that the transfer was not in execution of the trust, but to administer to the trustee’s own necessities ? This is not all. Before the execution of the deed to them, they knew of the arrangement respecting the Fauquier lands, and that Wormley had become dissatisfied with the bargain. They knew that these lands had not been settled by the trustee, upon the trusts of the settlement, and they took an equitable assignment of the mortgage, from Veitch, of the same lands. It may be said, that the evidence of these facts is not positively made out in the record ; but if it be not, the circumstantial evidence fully supports the conclusion. The answer itself of Castle-man and McCormick, does not deny notice of these facts. It states, indeed, that they supposed, the transaction with Veitch fair, because they were satisfied, that the trustee never received more from Veitch than what he has £Pven rá-6 oestuis que trust credit for. *Was it a fair execution of the trust, so to sell the estate, and to give credit for the proceeds ? To apply them to pay the trustee’s debts, and relieve his necessities ? To sell, without any definite intention as to a re-investment ? They also deny all knowledge of fraud. But this is a mere general denial, and does not negative the knowledge of the facts, from which the law may infer fraud.
The subsequent conduct of Castleman and McCormick shows, that they were not indifferent to the execution of the trust; but that they felt no interest to secure the rights of the cestuis que trust. They were privy to the removal to Kentucky, and exhibited much anxiety to have it accomplished. They knew, subsequently, the dissatisfaction of Wormley with that removal, and with the Kentucky lands. Yet they, in the year 1813, relieved the Fauquier lands from their own incumbrance, and enabled the trustee to dispose of it for other purposes than the fulfilment of the trusts for which it had been originally destined. And throughout the whole, their conduct exhibits an intimate acquaintance with the nature of their own title, and the manner and circumstances under which it had been acquired by Veitch, and the objections to which it might be liable. And they ultimately took the general warranty of Veitch, upon releasing their claim on the Fauquier lands, as a security for its validity.
There is a still stronger view which may be taken of this subject. It is a settled rule in equity, that a purchaser, without notice, to be entitled to Pro^ee^on3 must not only be so, at the time of the *contract or conveyance, but at the time of the payment of the purchase-money. The answer of Castleman and McCormick does not even allege any such want of notice. On the contrary, it is in proof, that upwards of $3000 of the pur *199 chase-money was paid in the autumn of 1813, and the spring of 1814. And this was not only after full notice of the anterior transactions, hut after the commencement of the present suit. It appears to us, therefore, that the circumstances of the case can lead to no other result, than that Castleman and McCormick were not purchasers, without notice of the material facts constituting the breach of trust; and that, therefore, the Frederick lands ought, in their hands, to stand charged with the trusts in the marriage-settlement. The leading principle of the decree in the circuit court was, therefore, right.
Some objections have been taken to the subordinate details of that decree ; but it appears to us, that the objections cannot be sustained. The decree directs an account of the rents and profits of the Frederick lands, while in possession of the defendants. It further directs an allowance of the amount of all incumbrances which have been discharged by the defendants, and of the value of any permanent improvements made thereon, and also of any advances made for the support of Wormley’s family. These advances are to be credited against the rents and profits ; and the value of the improvements, and of the discharged incumbrances, not recouped by the rents and profits, are to be a charge on the land itself. A more *liberal decree could not, in our opinion, be required by any reasonable view of the case.
An objection has been taken to the jurisdiction of the court, upon the ground, that Wormley, the husband, is made a defendant, and so all the parties on each side of the cause are not citizens of different states, since he has the same citizenship as his wife and minor children. But Wormley is but a nominal defendant, joined for the sake of conformity, in the bill, against whom no decree is sought. He voluntarily appeared, though, perhaps, he could not have been compelled so to do. Under these circumstances, the objection has no good foundation. This court will not suffer its jurisdiction to be ousted, by the mere joinder or non-joinder of formal parties ; but will rather proceed without them, and decide upon the merits of the case between the parties, who have the real interests before it, whenever it can be done, without prejudice to the rights of others, (a)

 The general rule and its exceptions, as to who are necessary parties to a hill in equity, are so fully and clearly laid down by Mr. Justice Story, in the case of West v. Randall (2 Mason 181-90), and the principles of practice asserted in the judgment, are so closely connected with the above position in the principal case in the text, that the editor has thought fit to subjoin the following extract. It is only necessary to state, that the case was of a bill filed by an heir, or next of kin, for a distributive share of an estate.
“It is a general rule in equity, that all persons materially interested, either as plaintiffs or defendants, in the subject-matter of the bill, ought to be made parties to the suit, however numerous they may be. The reason is, that the court may be enabled to make a complete decree between the parties, may prevent future litigation, by taking away the necessity of a multiplicity of suits, and may make it perfectly certain, that no injustice shall be done, either to the parties before the court, or to others, who are interested by a decree, that may be grounded upon a partial view only of the real merits. Mitf. Eq. Pl. 29, 144, 220; Coop. Eq. Pl. 33, &c., 185; 2 Madd. 142; Gilb. For. Rom. 157, 158; 1 Harris. Ch. Pr. ch. 3, p. 25 (Newl. ed); Leigh v. Thomas, 2 Ves. 312; Cockburn v. Thompson, 16 Id. 321; Beaumont v. Meredith, 3 Ves. & B. 180; Hamm v. Stevens, 1 Vern. 110. When all the parties are before the court, *200 it can see the whole case; hut it may not, where all the conflicting interests are not brought out upon the bill. Gilbert, in his Forum Romanum, p. 157, states the rule, and illustrates it with great precision. ‘If,’ says he, ‘it appears to the court, that a very necessary party is wanting; that without him no regular decree can be made; as where a man seeks for an account of the profits or sale of a real estate, and it appears upon the pleadings, that the defendant is only tenant for life, and consequently, the tenant in tail cannot be bound by the decree; and where one legatee brings a bill against an executor, and there are many other legatees, none of which will be bound either by the decree, or by the account to be taken of the testator’s effects, and each of these legatees may draw the account in question over again at their leisure; or where several persons are entitled, as next of kin, under the statute of distributions, and only one of them is brought in to a hearing ; or where a man is entitled to the surplus of an estate, under a will, after payment of debts, and is not brought in; or where the real estate is to be sold under a will, and the heir-at-law is not brought in: in these, and all other cases, where the decree cannot be made uniform, for as, on the one hand, the court will do the plaintiff right, so, on the other hand, they will take care that the defendant is not doubly vexed, he shall not be left under precarious circumstances, because of the plaintiff, who might have made all proper parties, and whose fault it was that it was not done.’ The cases here put are very appropriate to the case at bar. That in respect to legatees, probably refers to the case of a suit by one residuary legatee, where there are other residuary legatees; in which case, it has often been held, that all must be joined in the suit. Parsons v. Neville, 3 Bro. C. C. 365; Cockburn v. Thompson, 16 Ves. 321; Sherrit v. Birch, 3 Bro. C. C. 229; Atwood v. Hawkins, Rep. temp. Finch 113 ; Brown v. Rickets, 3 Johns. Ch. 553. But where a legatee sues for a specific legacy, or for a sum certain on the face of the will, it is not, in general, necessary, that other legatees should be made parties, for no decree could be had against them, if brought to a hearing (Haycock v. Haycock, 2 Ch. Cas. 124; Dunstall v. Rabett, Finch 243; Attorney-General v. Ryder, 2 Ch. Cas. 178; Atwood v. Hawkins, Rep. temp. Finch 118; Wainwright v. Waterman, 1 Ves. jr. 311); and in general, no person, against whom, if brought to a hearing, no decree could be had, ought to be made a party. De Golls v. Ward, 3 P. Wms. 310, note. And when a party is entitled to an aliquot proportion only of a certain sum in the hands of trustees, if the proportion and the sum be clearly ascertained and fixed, upon the face of the trust, it has been held, that he may file a bill to have it transferred to him, without making the persons entitled to the other aliquot shares of the fund, parties. Smith v. Snow, 3 Madd. 10. The reason is the same as above stated, for there is nothing to controvert with the other eestwis que trust. I am aware, that it has been stated by an elementary writer of considerable character, that one of the next of kin of an intestate may sue for his distributive share, and the master will be directed by the decree, to inquire and state to the court, who are all the next of kin, and they may come in under the decree. Coop. Eq. Pl. 39, 40. This proposition may be true, sub modo\ but that it is not universally true, is apparent from the authority already stated. See Bradwin v. Harpur, Ambl. 374, 2 Madd. 146; Gilb. For. Rom. 157.
“ This rule, however, that all persons, materially interested in the subjeet of the suit, however numerous, ought to be parties, is not without exception. As Lord Eldon has observed, it being a general rule, established for the convenient administration of justice, it must not be adhered to in cases, to which, consistently with practical convenience, it is incapable of application. Cockburn v. Thompson, 16 Ves. 321. And see s. p. Wendell v. Van Rensselaer, 1 Johns. Ch. 349. Whenever, there *201 fore, the party supposed to be materally interested is without the jurisdiction of the court; or if a personal representative be a necessary party, and the right of representation is in litigation in the proper ecclesiastical court; or the bill itself seeks a discovery of the necessary parties; and, in either case, the facts are charged in the bill, the court will not insist upon the objection; but, if it can, will proceed te make a decree betweed the parties before the court, since it is obvious, that the case cannot be made better. Mitf. 145, 146; Coop. Eq. Pl. 39, 40; 2 Madd. Ch. Pr. 143; 1 Harris. ch. 3. Nor are these the only cases; for where the parties are very numerous, and the court perceives, that it will be almost impossible to bring them all before the court; or where the question is of general interest, and a few may sue for the benefit of the whole; or where the parties from a part of a voluntary association for public or private purposes, and may be fairly supposed to represent the rights and interests of the whole ; in these and analogous cases, if the bill purports to be not merely in behalf of the plaintiffs, but of all others interested, the plea of the want or parties will be repelled, and the court will proceed to a decree. Yet, in these cases, so solicitous is the court to attain substantial justice, that it will permit the other parties to come in under the decree, and take the benefit of it, or to show it to be erroneous, and award a rehearing; or will entertain a bill or petition, which shall bring the rights of such parties more distinctly before the court, if there be certainty or danger or injury or injustice. Coop. Eq. Pl. 39; 2 Madd. 144, 145; Cockburn v. Thompson, 16 Ves. 321. Among this class of cases, are suits brought by a part of a crew of a privateer against prize-agents, for an account, and their proportion of prize-money. There, if the bill be in behalf of themselves only, it will not be sustained; but if it be in behalf of themselves, and all the rest of the crew, it will be sustained, upon the manifest inconvenience of any other course; for it has been truly said, that no case can call more strongly for indulgence, than where a number of seamen have interests ; for their situation, at any period, how many were living, at any given time, how many are dead, and who are entitled to representation, cannot be ascertained (Good v. Blewitt, 13 Ves. 397; Leigh v. Thomas, 2 Ibid. 312; contrà Moffa v. Farquherson, 2 Bro. C. C. 338; acc. Brown v. Harris, 13 Ves. 552; Cockburn v. Thompson, 16 Ibid. 321); and it is not a case, where a great number of persons, who ought to be defendants, are not brought before the court, but are to be bound by a decree against a few. So also is the common case of creditors suing on behalf of the rest, and seeking an account of the estate of their deceased debtor, to obtain payment of their demands; and there the other creditors may come in and take the benefit of the decree. Leigh v. Thomas, 2 Ves. 312; Cockburn v. Thompson, 16 Ibid. 321; Hendricks v. Franklin, 2 Johns. Ch. 283; Brown v. Ricketts, 3 Ibid. 553; Coop. Eq. Pl. 39, 186. But Sir John Strange said, there was no instance of a bill by three or four, to have an account of the estate, without saying they bring it in behalf of themselves and the rest of the creditors. Leigh v. Thomas, 2 Ves. 312; Coop. Eq. Pl. 39. And legatees seeking relief, and an account against executors, may sue in behalf of themselves and all other interested persons, when placed in the same predicament as creditors. Brown v. Ricketts, 3 Johns. Ch. 553. Another class of cases is, where a few members of a voluntary society, or an unincorporated body of proprietors, have been permitted to sue in behalf of the whole, seeking relief, and an account, against their own agents and committees. Such was the ancient case of the proprietors of the Temple Mill Brass-Works (Chancey v. May, Prec. Ch. 592); and such were the modern cases of the Opera House, the Royal Circus, Drury Lane Theatre, and the New River Company. (Lloyd v. Loaring, 6 Ves. jr. 773; Adair v. New River Company, 11 Ibid. 429; Cousins v. Smith, 13 Ibid. 542; Coop. Eq. Pl. 40; Cockburn v. Thompson, 16 Ves. 321.) There is one *202 other class of cases, which I will just mention, where a lord of a manor has been permitted to sue a few of his tenants, or a few of the tenants have been permitted to sue the lord, upon the question of a right of common; or a parson has sued, or been sued by,' some of his parishioners, in respect to the right of tithes. In these and analogous cases of general right, the court dispense with having all the parties, who claim the same right, before it, from the manifest inconvenience, if not impossibility, of doing it, and is satisfied with bringing so many before it, as may be considered as fairly representing that right, and honestly contesting in behalf of the whole, and therefore, binding, in a sense, that right. 2 Madd. 145; Coop. Eq. Pl. 41; Mitf. Pl. 145; Adair v. New River Company, 11 Ves. 429. But even in the case of a voluntary society, where the question was, whether a dissolution and division of the funds, voted by the members, was consistent with their articles, the court refused to decree, until all the members were made parties. Beaumont v. Meredith, 8 Ves. & B. 180. The principle upon which all these classes of cases stand, is, that the court must either wholly deny the plaintiffs an equitable relief, to which they are entitled, or grant it without making other persons parties; and the latter it deems the least evil, as it can consider other persons as quasi parties to the record, at least, for the purpose of taking the benefit of the decree, and of entitling themselves to other equitable relief, if their rights are jeoparded. Of course, the principle always supposes, that the decree can, as between the parties before the court, be fitly made, without substantial injury to third persons. If it be otherwise, the court will withhold its interposition.
“The same doctrine is applied, and with the same qualification, to cases where a material party is beyond the jurisdiction of the court, as, if the party be a partner with the defendant, and resident in a foreign country, so that he cannot be reached by the process of the court. There, if the court sees, that without manifest injustice to the parties before it, or to others, it can proceed to a decree, it acts upon its own notion of equity, without adhering to the objection. Coop. Eq. Pl. 35; Mitf. Pl. 146; Cowslad v. Cely, Prec. Ch. 83; Darwent v. Walton, 2 Atk. 519; Whalley v. Whalley, 1 Ves. 484, 487; Milligan v. Milledge, 3 Cranch 220. The ground of this rule is peculiarly applicable to the courts of the United States ; and therefore, if a party, who might otherwise be considered as material, by being made a party to the bill, would, from the limited nature of its authority, oust the court of its jurisdiction, I should strain hard to give relief, as between the parties before the court ; as, for instance, where a partner, or a joint trustee, ora residuary legatee, or one of the next of kin, from not being a citizen of the state, where the suit was brought, or from being a citizen of the state, if made a plaintiff, would defeat the jurisdiction, and thus destroy the suit, I should struggle to administer equity between the parties properly before us, and not suffer a rule, founded on mere convenience and general fitness, to defeat the purposes of justice. Russell v. Clarke, 7 Cranch 69, 98.
‘ ‘ I have taken up more time in considering the doctrine as to making parties, than this case seemed to require, with a view to relieve us from some of the difficulties pressed at the argument, and to show the distinctions (not always very well defined) upon which the authorities seem to rest. Apply them to the present case. The plaintiff claims, as heir, an undivided portion of the surplus, charged to be in the defendants’ hands and possession. No reason is shown on the face of the bill, why the other heirs, having the same common interest, are not parties to it. The answer gives their names, and shows them within the jurisdiction of the court, and as defendants, they might have been joined in this suit, without touching the jurisdicton of the court, for they are all resident in this state. As plaintiffs, they could not be joined, without ousting our jurisdiction, for then some of the plaintiffs would have been citizens of the same *203 state as the defendants. Strawbridge v. Curtiss, 3 Cranch 267. Now, in the first place, the other heirs might, if parties, controvert the very fact of heirship in the plaintiff, and that would touch the very marrow of his right to the demand now in question. The fact, however, is not denied or put in issue by the answer, and therefore, as to the present defendants, it forms no ground of controversy. But they insist, that the present suit will not close their accounts ; and that the other heirs may sue them again, and controvert the whole matter now in litigation, and thus vex them with double inconveniences and perils. This is certainly true ; and it is as certain, that they could not be made plaintiffs, without ousting the present plaintiff of his remedy here. They might have been made defendants ; but the question is, whether the plaintiff is compellable so to make them, unless they deny his heirship, or they collude with the defendants. If there be no controversy between him and them, he could have no decree against them, at the hearing ; and it would be strange, if, when he has nothing to allege against him, he must still name them as defendants in his bill. I agree to the general doctrine, that where a residuary legatee sues, he must make the other residuary legatees parties; and I think it analogous to the present case. But there the rule would not apply, if the other residuary legatees were in a foreign country, or without the reach of the jurisdiction of the court. The case of the next of kin, put by Gilbert, in the passage before cited, is indentical with the present. Gilb. For. Rom. 157, 158. But there, the same exception must be implied. And even in a case where a mistake in a legacy, of an aliquot part of the personal estate, was sought to be rectified, and the next of kin were admitted to be necessary parties (as to which, however, as the executor represents all parties in interest as to the personal estate, a doubt might be entertained, whether, under the peculiar circumstance of this case, they were necessary defendants, Peacock v. Monk, 1 Ves. 127; Lawson v. Barker, 1 Bro. C. C. 303; 1 Eq. Cas. Abr. 73, p. 13; Anon., 1 Ves. 261; Wainwright v. Waterman, 1 Ves. jr. 311), the court dispensed with their being made parties, it appearing that they were numerous, and living in distant places, and the matter in dispute being small, and the plaintiff a pauper. Bradwin v. Harpur, Ambl. 374. The rule is not, then, so inflexible, that it may not fairly leave much to the discretion of the court, and upon the facts of the present case, it being impossible to make the other heirs plaintiffs, consistently with the preservation of the jurisdiction of the court, or to make them defendants, from any facts which can be truly charged against them; I should hesitate a good while before I should enforce the rule; and if the cause turned solely upon this objection, I should not be prepared to sustain it. Russell v. Clark, 7 Cranch 69, 98. There is, indeed, a difficulty upon the face of the bill, that it shows no reason why the other heirs were not made parties, as plaintiffs ; and if there had been a demurrer, it might have been fatal. But the answer seems to set that right,by disclosing the citizenship and residence of the other heirs; and in this respect, relying on the facts as a defence, it may well aid the defects of the bill.
“ There is, however, a more serious objection to this bill for the want of parties ; and that is that the personal representative of William West is not brought before the court, and for this no reason is assigned in the bill. Now, it is to be considered, that the bill charges the defendants with trust property, personal as well as real, and prays an account, and payment of the plaintiff ⅛ distributive share of each. I do not say, that the heir, or next of kin, cannot, it any case, proceed for a distributive share, against a third person, having in his possession the personal assets of the ancestor, without making the personal representative a party ; but such a case, if at all, must stand upon very special circumstances, which must bo charged in the bill. The administrator of the deceased is, in the first place, entitled to his whole personal estate, in trust *204 for the payment of debts and charges, and as to the residue, in trust for the next of kin. The latter are entitled to nothing, until all the debts are paid ; and they cannot proceed against the immediate debtor of the deceased, in any case any more than legatees or creditors, unless they suggest fraud and collusion with the personal representative, and then he must be made a party, or some other special reason be shown for the omission. Newland v. Champion, 1 Ves. 105; Utterson v. Mair, 4 Bro. C. C. 270; s. c. 2 Ves. jr. 95; Alsagar v. Rowley, 6 Ves. 751; Bickley v. Donington, 2 Eq. Cas. Abr. 78, 253. It is, therefore, in general, a fatal objection in a bill for an account of personal assets, that the administrator is not a party ; nor is this objection repelled, if there be none at the time, unless there be some legal impediment to a grant of administration. Humphrey v. Humphrey, 3 P. Wms. 348; Griffith v. Bateman, Rep. temp. Finch 334. Now, upon the facts of this case, it is apparent, that William West died insolvent ; and if so, it would be decisive against the plaintiff ⅛ title to any portion of the personalty. And as to the real estate, as that is also liable, in this state, to the debts of the intestate, this fact would be equally decisive of his title to any share in the real trust property. This shows, how material to the cause, the personal representative of the intestate is, since he is, ex officio, the representative, in cases of this sort, of the creditors. But upon the general ground, without reference to these special facts, I think that the personal representative of William West, not being a party is a well-founded objection to proceeding to a decree. I am aware, that a want of parties is not necessarily fatal, even at the hearing, because the cause may be ordered to stand over to make further parties (Anon., 2 Atk. 14; Coop. Eq. Pl. 389; Jones v. Jones, 8 Atk. 111); but this is not done of course; and rarely, unless where the cause, as to the new parties, may stand upon the bill and the answer of such parties. For if the new parties may controvert the plaintiff’s very right to the demand in question, and the whole cause must be gone over again, upon a just examination of witnesses, it seems at least doubtful, whether it may not be quite as equitable to dismiss the cause, without prejudice, so that the plaintiff may begin de novo. Gilb. For. Rom. 159. If this cause necessarily turned upon this point alone, I should incline to adopt this course.”