Stanard, J.
delivered the following as the opinion of the court:
The court is of opinion that the evidence in this case is insufficient to fasten on the appellant the charge of actual fraud or covin in the purchase of the land that belonged to the estate of Thomas Lafferty. The appellant, however, was confessedly the agent of the administratrix with the will annexed of Lafferty, on whom the power of making the sale was conferred by the will; *300 and, as the evidence shews, an agent acting in a great degree without the supervision of his principal, and practically conducting the administration without control. A purchase by such an agent is in substance not better t^an a pUrchase from himself, and though it might bind him, is not binding on the beneficiaries interested in the execution of the trust, unless ratified by them deliberately and on full information ; and they, to the extent of their interest, are entitled to the benefit of any advance that may be realized on a resale. The court is further of opinion that no such ratification of the appellant’s purchase appears in this case, nor does the delay on the part of the plaintiffs in the court below to impeach the purchase (due allowance being made for the infancy of some and the nonresidence of others) deprive them of their right to the aid of a court of equity.
The court is further of opinion that the plaintiffs, the legatees of Lafferty, were interested in the sale of the land and the proceeds thereof, to the extent only that those proceeds were necessary to pay their legacies; and if those proceeds, blended with the other funds dedicated by the will to the payment of those legacies, were adequate to discharge them, the plaintiffs, having under the will no interest in the surplus, would have no interest, and consequently no title, to question the sale. The allegation of the bill that part only of those legacies had been paid not being controverted by the answer, the court was justified in proceeding on the assumption that part of the legacies remained unpaid ; but as that gave to the legatees but a limited interest in cancelling the purchase of the appellant or having a resale, the extent of that interest ought by a proper account to have been ascertained, to the end that the purchaser, if his purchase was not effectually questioned by any other than the plaintiff legatees, might have the opportunity, if he thought proper to use it, of *301 removing the interest of those plaintiffs in, and consequently their right to, the experiment of a resale, by paying to them the parts unsatisfied of their legacies. If, on such an account, the purchaser should not avail himself of the opportunity to prevent the experiment of a resale, the plaintiffs would be entitled to have the land reexposed to sale at a proper upset price, to be ascertained in the manner following. An account should be taken, in which the appellant should be debited with the full amount of the profits of the land, or with a fair annual rent therefor, since his purchase, and credited, 1st. with the payments made by him for the purchase, with interest on those payments from the dates respectively at which they have been made available to the legatees, and 2dly, with all the substantial and permanent improvements made on the land since the purchase. The balance of such account, with ihe addition thereto of a reasonable amount for the commission and charges of resale, is the sum at which the land on a resale should be set up, on a credit of 6, 12 and 18 months for equal instalments of the purchase money, with interest on those instalments from the day of sale. If the land and improvements should not sell for more than the upset price, the purchase heretofore made by the appellant should in all respects stand confirmed. If it should sell beyond that sum, then the former sale should be vacated, and the case further proceeded in by causing the purchase money on such sale to be paid, and a proper conveyance to be made to the purchaser, and the proceeds of sale applied, 1st. to pay the charges of sale ; 2ndly, to pay to the appellant the balance shewn by the said account to be due for purchase money and improvements; and the surplus to the legatees of Lafferty, according to their respective rights. The court is consequently of opinion that the decree of the circuit superior court is erroneous. It is therefore adjudged, ordered and decreed that the said *302 decree be reversed, and that the appellees pay to the appellant the costs expended in prosecuting his appeal in this court. And the cause is remanded to the circuit superior court, for further proceedings according to principles above declared.

Note by the reporter.—The leading cases upon the principal question in this are Whelpdale v. Cookson, 1 Ves. sen. 9. 5 Ves. jun. 683. Fox v. Mackreth and others, 2 Brown’s C. C. 400. 2 Cox 320. 4 Brown’s Par. Cas. 258. (Tomlin’s edi.) and The York Buildings Company v. Mackenzie, 8 Brown’s Par. Cas. 42. (same edi.) The two last decisions were in the house of lords, where the subject underwent the ablest discussion; a discussion in which light was obtained from the writers upon the civil as well as from the judges of the common law, and the doctrine traced back to its original source. “ It is,” said the counsel for the York buildings company, (p. 63, 4.) “ the constitution of nature itself, and is as old as the formation of society, and of course it must be universal. It proceeds from nature, and is silently received, recognized and made effectual wherever any well regulated system of civil jurisprudence is known. The ground on which the disability or disqualification rests is no other than that principle which dictates that a person cannot be both judge and party. No man can serve two masters. He that is entrusted with the interest of others cannot be allowed to make the business an object of interest to himself, because, from the frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of those for whom he is entrusted. The danger of temptation, from the facility and advantages for doing wrong which a particular situation affords, does, out of the mere necessity of the case, work a disqualification; nothing less than incapacity being able to shut the door against temptation where the danger is imminent and the security against discovery great, as it must be where the difficulty of prevention or remedy is inherent to the very situation which creates the danger. The wise policy of the law has therefore put the sting of a disability into the temptation, as a defensive weapon against the strength of the danger which lies in the situation.” The doctrine is laid down in like general terms by the chancellor of New York in two recent cases, Van Epps v. Van Epps, 9 Paige 241. and Torrey v. The Bank of Orleans, 9 Paige 663. He says in the last, “It is a settled principle of equity that no person who is placed in a situation of trust or confidence in reference to the subject of the sale, can *303 be a purchaser of the property on his own account.” He adds, “ In the recent case of Greenlaw v. King, decided in the court of chancery in England in January 1841, (5 Lond. Jur. 18.) lord Cottenham held that the principle was not confined to a particular class of persons, such as guardians, trustees, or solicitors, but was a rule of universal application to all persons coming within its principle; which is, that no party can be permitted to purchase an interest, where he has a duty to perform that is inconsistent with the character of purchaser.”
The decisions of lord Eldon strongly support the rule. In Ex parte James, 8 Ves. 345. he said, “This doctrine as to purchases by trustees, assignees, and persons having a confidential character, rests much more upon general principle than upon the circumstances of any individual case. It rests upon this, that the purchase is not permitted in any case, however honest the circumstances ; the general interests of justice requiring it to be destroyed in every instance, as no court is equal to the examination and ascertainment of the truth in much the greater number of cases.” On a subsequent day he said, (p. 348.) “ My opinion in this case is purely upon the principle.”—“ The principle is, that as the trustee is bound by his duty to acquire all the knowledge possible, to enable him to sell to the utmost advantage for the cestui que trust, the question what knowledge he has obtained, and whether he has given the benefit of that knowledge to the cestui que trust which he always acquires at the expense of the cestui que trust, no court can discuss with competent sufficiency or safety to the parties.” “ The courts have said, it is better for the general interests of justice that in some cases a loss should be sustained by a cestui que trust, than a rule should be established which would occasion loss in much more numerous cases.”
Lord Eldon must be understood here as alluding to a case in which the confidential relation still continues. For in Ex parte Lacey, 6 Ves. 626. he had said, the rule does not preclude the trustee from bargaining that he is no longer to act as such. “ The cestui que trusts may,” (he observed) “by anew contract, dismiss him from that character: but even then, that transaction by which they dismiss him must, according to the rules of this court, be watched with infinite and most guarded jealousy; and for this reason, that the law supposes him to have acquired all the knowledge a trustee may acquire; which may be very useful to him, but the communication of which to the cestui que trusts the court can never be sure he has made, when entering into the new contract by which he is discharged.” Again, in Ex parte James, 8 Ves. 353. adverting to Fox v. Mackreth, he states the question properly to have been, “ whether a person who had a confidential situation previously to the purchase, had at the time of the pur *304 chase shaken off that character, by the consent of the cestui que jirust freely given after full information, and bargained for the right to purchase.” And in Coles v. Trecothick, 9 Ves. 246. he says, “A trustee may buy from the cestui que trust, provided there is a distinct and clear contract, ascertained to be such after a jealous an(j scrUpUi0US examination of all the circumstances, that the cestui que trust intended the trustee should buy; and there is no fraud, no concealment, no advantage taken by the trustee of information acquired by him in the character of trustee. I admit it is a difficult case to make out, wherever it is contended that the exception prevails.”
These doctrines have been recognized in many other cases in England: Ex parte Bennett, 10 Ves. 393. Randall v. Errington, 10 Ves. 427. Morse v. Royal, 12 Ves. 373. Sanderson v. Walker, 13 Ves. 601. Downes v. Glazebrook, 3 Meriv. 207. Woodhouse v. Meredith, 1 Jac. & Walk. 222. and Rothschild v. Brookman, 5 Bligh N. S. 190. And they have also been approved and sanctioned by many of the courts in this country: in New York by chancellor Kent, as well as by the present chancellor, Davoue v. Fanning, 2 Johns. Ch. Rep. 252. Hawley v. Cramer, 4 Cowen 734.; by chancellor Desaussure of South Carolina in Butler &c. v. Haskell, 4 Desauss. 705.; by chief justice Marshall in Teakle v. Bailey, 2 Brock. 52.; by the supreme court of the United States in Wormley v. Wormley, 8 Wheat. 421.; and by this court in Carter &c. v. Harris, 4 Rand. 204. and Segar v. Edwards and wife, 11 Leigh 213. as well as in the present case.
In the present case, it could not be said that the relation of principal and agent had been changed; that the confidence in the agent had been withdrawn. And as strict a rule was applicable as that laid down by lord Eldon in Gibson v. Jeyes, 6 Ves. 271. He there said, “An attorney buying from his client can never support it, unless he can prove that his diligence to do the best for the vendor has been as great as if he was only an attorney dealing for that vendor with a stranger. That must be the rule. If it appears that in that bargain he has got an advantage by his diligence being surprised, (putting fraud and incapacity out of the question) which advantage, with due diligence, he would have prevented another person from getting, a contract under such circumstances shall not stand.”—“From the general danger, the court must hold that if the attorney does mix himself with the character of vendor, he must shew to demonstration (for that must not be left in doubt) that no industry he was bound to exert would have got a better bargain.” And the court in the present case might properly conclude, as lord Eldon did in that, “ Therefore, without imputing fraud, a general principle of public policy makes it impossible that this bargain can stand.”