LAURA A. HAYDEL ET AL., Plaintiffs in Error, *v.* DORA HURCK ET AL., Defendants in Error.

February 12, 1878.

5 267|
146 m 447|

1. A trustee may, under suitable circumstances, make advances in order to accomplish the objects of the trust; but such advances will not be sanctioned if in contravention of any express provision in the instrument by which the trust is created.

2. Disbursements made by a trustee will not be allowed against the estate if they be such as a court of equity, upon application in due form, would refuse to order.

3. Courts of equity never favor a construction that confers upon the trustee absolute and uncontrolled powers.

4. A sale by a trustee, for the mere purpose of converting real estate into personalty, or *vice versa*, or without some well-defined and proper purpose in view, will render the trustee responsible for any resulting loss.

5. Where there is a limitation over to a stranger after the death of the beneficiary, neither the trustee nor a court of equity can expend any part of the capital fund for the maintenance of the ward.

6. Certain property was devised to a trustee, "out of the proceeds, interest, rents, income, or profits" of two-thirds of which the trustee was to pay to the testatrix's brother such sums as, in the trustee's discretion, were necessary for his support; and on the brother's death without issue, the

remainder to go to residuary legatees. The trustee, in the course of six years, paid the brother a sum exceeding the gross proceeds of the estate, and more than four times two-thirds of the net proceeds. *Held*, that the trustee abused his discretion, exceeded his powers, and had no authority to thus impair the capital of the trust-fund; and *held further*, that the beneficiary and the residuary legatees had such an interest as enabled them to institute proceedings for the appointment of a new trustee, and for an accounting.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

FARISH & GRIFFIN, for plaintiffs in error, cited : Perry on Tr. 400, sec. 619 ; Lewin on Tr. 519 ; *Lee* v. *Brown*, 4 Ves. 362.

JAMES TAUSSIG and ARBA N. CRANE, for defendants in error : The trustee, under the power in the will, had a right to advance money to the beneficiary, and is entitled to reimbursement therefor out of the trust-estate. — 2 Perry on Tr., sec. 485 ; *Iredell* v. *Langston*, 1 Dev. Eq. 392 ; *Balsh* v. *Hyham*, 2 P. Wms. 455. The trustee exercised the discretion given him as to the amount to be furnished the beneficiary fairly, in good faith, without fraud, or color of fraud, and without profit or gain to himself, or prospect of either, and the court cannot interfere. — 2 Perry on Tr., sec. 910 ; Hill on Tr., side pp. 487, 494. Advances made to or for the benefit of the *cestui que trust* by the trustee, on the faith of the estate, may be allowed to the trustee, even as against the creditors of the *cestui.* — Perry on Tr. 824, and cases cited in note ; *Altimus* v. *Elliot*, 2 Pa. St. 62 ; *Rensselaer R. Co.* v. *Miller*, 47 Vt. 146. Where a trustee has made advances in the execution of his trust, they are a charge or lien upon the trust-estate, and the *cestui que trust* cannot compel the trustee to convey until the trustee's demands against the estate are satisfied. — *Jones* v. *Dawson*, 19 Ala. 672 ; *Murray* v. *De Rotterham*, 6 Johns. Ch. 52 ; *Noyes* v. *Blakeman*, 6 N. Y. 567 ; *King* v. *Cushman*, 41 Ill. 31 ; *Robbles* v. *Clarke*, 25 Cal. 317 ; *Morton* v. *Adams*, 1 Strobh. Eq. 53. If the trustee had

possessed only the discretion implied by his office of trustee, he would be entitled to allowance for advances made for the support of the beneficiary, to the same extent as a court of equity would, upon application, have authorized. — Perry on Tr., sec. 915; *Williams* v. *Smith*, 10 R. I. 280; *Matter of Bostwick*, 4 Johns. Ch. 100; *Williamson* v. *Berry*, 8 How. 555; *Otto* v. *Becton*, 55 Mo. 101, and cases cited. If the purposes of the trust cannot be accomplished without serious delays, the court may direct that the estate be sold or mortgaged for that purpose, though the power given had been to raise money for these purposes in a different way.— *Conkling* v. *Washington University*, 2 Md. Ch. 497. There was no contingent remainder-estate created by the will in favor of the residuary legatee, and the trustee might convey the estate by deed, passing the absolute fee. — *Pendleton* v. *Bell*, 32 Mo. 100; *Jecks* v. *Taussig*, 45 Mo. 167; *McDowell* v. *Brown*, 21 Mo. 57; *English* v. *Bechler*, 32 Mo. 186; *Sawyer* v. *Banfield*, 44 N. H. 149.

LEWIS, P. J., delivered the opinion of the court.

Plaintiffs are devisees, legatees, and beneficiaries under the last will and testament of Rosa D. Rice, deceased, and defendants are the legal representatives of Peter J. Hurck, deceased, who was her executor and testamentary trustee. The will, which was probated Aug. 12, 1869, conveyed all the testatrix's property to her executor and his heirs, successors, and assigns, in trust for the uses and purposes therein set forth, with full power to sell, deed in trust, lease, mortgage, convey, or in any other manner dispose of the same at private or public sale; the proceeds of sale, together with the "rents, income, or revenue" of the estate, to be invested and reinvested by the trustee in such securities as to him might seem best. Out of the money which should come into his hands, the trustee was directed to pay the debts of the testatrix, erect a monument

on the family burying-ground, and make improvements thereon not exceeding $10,000, and to expend a sum not exceeding $2,000 for pious and charitable purposes. The third, fourth, and sixth dispositions are as follows: —

"*Third.* One-third of the balance of my estate, or of the proceeds thereof, my said trustee is to hold for the benefit of the two children of my deceased sister Ann, till the youngest of them arrives at the age of twenty-one, when he is to give, convey, or make over the same to them, or to the survivor of them, or to some trustee, for his, her, or their sole use and benefit. But should both of them die before that time without leaving descendants, then this third clause of my will shall be void, and the one-third hereby devised shall be held by my said trustee upon the trusts set forth in the fourth and next succeeding clause of my will. Should the said children of my sister Ann, or either, marry and die before attaining the age of twenty-one years, leaving issue, then the share of such child of my deceased sister Ann is to go to the said issue, child or children, and is to be held in trust for said child or children until they attain the age of twenty-one years, and then to be conveyed or delivered to him, her, or them.

"*Fourth.* Out of the proceeds, interest, rents, income, or profits of the balance of my estate my said trustee shall, from time to time, pay over to my brother, John W. Rice, such sum or sums of money as my brother may need for his support. Not knowing how much may be necessary for that purpose, I leave the amount entirely to the discretion of my said trustee, with the understanding that the aggregate shall not exceed the remaining two-thirds of the proceeds of my said estate, except in case the preceding clause of my last will and testament in favor of the children of my deceased sister Ann should become void, for in that case my said trustee may also employ that one-third for the support of my brother, should my said trustee deem it proper and expedient to do so. Should my said brother John marry and

die, leaving issue him surviving, then my said trustee shall. hold all the above balance of my estate in trust for such child or children of John, share and share alike, and may convey the same to them in equal shares, or some trustee,. for their sole use and benefit.''

"*Sixth*. The balance or remainder of my estate I give and bequeath to the managers of the Roman Catholic orphan asylums of St. Louis, whom I appoint residuary legatees.''

The executor and trustee died in August, 1875. The petition prays for the appointment of a new trustee, a, divestiture of title out of the defendants, and an accounting between the administrator of the deceased trustee and the new trustee, when so appointed. An interlocutory order was entered, appointing Michael J. Hartnett trustee under the will, and making him a co-plaintiff. The heirs of Hurck filed a separate answer, ignoring most of the material alle-gations in the petition, and alleging that their ancestor had, in good faith, made large advances to John W. Rice, bene-ficiary under the will, which created a charge upon the estate of the testatrix. They prayed that this charge be enforced in their favor by a sale of the interest of John W. Rice, and for other proper relief. The administrator answered, setting forth the account of his intestate's receipts and disbursements. Plaintiffs replied, admitting the correctness of the several items, but denying that payments or advances to John W. Rice were made in good faith, or were authorized by the terms of the trust, or could create any charge upon the estate in favor of the deceased trustee's representatives.

Upon hearing the testimony, the court found that the deceased trustee was indebted to the plaintiffs Laura and Edward Haydel in the sum of $2,801.11, and that the new trustee had in his hands the sum of $1,025.22, from rents collected. The court directs this sum to be paid to said plaintiffs, and that the remainder of their claim be satisfied.

out of the proceeds of sales thereinafter directed to be made. The decree proceeds as follows : "And it further appearing to the court that for want of sufficient moneys of the trust-estate for that purpose, and in the reasonable and proper exercise of his discretion therein, said Peter J. Hurck, trustee, advanced sums amounting at this date to twenty-three thousand seven hundred and forty-three dollars and ninety-two cents (whereof five thousand eight hundred and ninety-two dollars and twenty-five cents is the difference of simple six per cent interest, in favor of said Hurck, calculated on said advances and on the moneys received by him) from his individual moneys, for the support of John W. Rice, on the faith and credit of said trust in said will of Rosa D. Rice in favor of said John W. Rice, and with the expectation of being reimbursed said advances and interest from said trust-estate; the court doth therefore adjudge and decree that the sum so advanced by said trustee, Peter J. Hurck, for the support of said plaintiff John W. Rice, is a charge and a lien upon the trust-estate, and the trustee, Michael J. Hartnett, is hereby directed to make and effect a loan and raise a sufficient sum of money by pledging the two-thirds interest of said trust-estate liable to be applied to the support of said plaintiff John W. Rice, to pay off the said advances made to him by said deceased trustee, with interest. And should the said Hartnett, trustee, be unable or fail to raise such sum within six months of the date of this decree, he is decreed and *directed*, for the purpose of raising money sufficient to pay off said lien for advances, to sell the whole or such part of said trust-estate in his hands as may be necessary to pay off said lien, at public sale," etc.

It appears from the testimony that a fair average valuation of the estate left by the testatrix would be about $90,000. This is encumbered to the amount of $36,600, of which $5,000 is from a deed of trust executed by Hurck after the estate came into his hands. During his trusteeship of six years his entire receipts were: From rents,

$8,391.86 ; from sales of real estate, $7,906.78 ; from loan on deed of trust, $5,000 ; total receipts, $21,298.64. During the same period, his disbursements for interest and necessary expenditures amounted to $13,423.17. This should leave for distribution to the beneficiaries a balance of $7,875.47, of which two-thirds, available for the benefit of John W. Rice, would be $5,250.31. The trustee in fact paid, however, to that beneficiary the sum of $23,385, besides a further sum of $568.90 for United States succession-tax on his interest, making $23,953.90, or $18,703.59 more than his proportionate share under the will, and $2,655.26 more than the gross proceeds, including loans and sales, from the estate. From these excessive payments or advances to one beneficiary arises the charge which the decree of the Circuit Court fixes upon the trust-estate in favor of the trustee's personal representatives. Whether this decree is sustainable upon the principles of equity must be determined by the intent of the testatrix, as this may be ascertained from the terms of her last will. Should the decree be effectuated by a sale, as authorized, the net value of the entire estate remaining will be reduced in round numbers from $54,000 to $29,000. Did the testatrix contemplate such a possible result, when she stipulated that the aggregate of allowances for her brother's support should not exceed two-thirds of the " proceeds " of the estate?

It is not doubted that a trustee may, under suitable circumstances, make advances in order to accomplish the objects of the trust. But such advances will not be sanctioned if in contravention of any express provision in the instrument by which the trust is created. The defendants insist that by the term " proceeds " the testatrix meant, not merely the current income from rents, etc., of her estate, but also the sums arising from sales of any parts or the whole of the property itself, or from loans raised thereupon, under the plenary powers granted to her trustee. But if this interpretation be conceded, it is still certain that the

trustee violated the express limitation upon his authority when he paid, in the course of six years, to this two-thirds beneficiary a sum exceeding the gross " proceeds " from all sources, and more than four times two-thirds of the net proceeds, after deduction of necessary expenses.

Another limitation upon the trustee's right to make advances is, that they will not be allowed in any case if the disbursement be such as a court of equity, upon application made in due form, would refuse to order. If the decree of the Circuit Court in this case, approving the advances made, and affirming its approval by an order authorizing a sale of so much of the *corpus* of the estate as would reimburse the trustee, was equitable and proper, then it must be true that the trustee, under the powers conferred upon him, might have sold, in the first instance, so much of the property as would suffice for the disbursements made to the beneficiary ; or that a court of equity might have directed him so to do. The converse of this proposition is equally true, and *vice versa*. So that, if such a sale as last supposed might not properly have been made, or would not have been authorized by a court of equity, the decree of the Circuit Court was erroneous.

It seems to be assumed for defendants that the comprehensive grant of power to the trustee to " sell, deed in trust, lease, mortgage, convey, or in any other manner dispose of the same at private or public sale," together with the unlimited discretion he might exercise as to the amount necessary for the beneficiary's support, left him absolutely free from control in all such matters ; so that he might deal with them as if the property were his own. But this is a mistake. A court of equity will never favor a construction that confers upon the trustee absolute and uncontrollable powers. *Topham* v. *Duke of Portland*, 1 De G. J. & S. 568. In this case, the will provides : " The proceeds of such sale, together with the rents, income, or revenue of my estate, my said trustee may invest and reinvest in such

securities as to him may seem best.'' The intent and purpose of all such powers is universally held to be the preservation and amelioration of the trust-estate. It is said that trustees ought always to have an immediate and advantageous investment in view before they sell existing securities. *Watts* v. *Girdlestone*, 6 Beav. 188; *Wormley* v. *Wormley*, 8 Wheat. 421. A sale for the mere purpose of converting real estate into personal, or *vice versa*, or without some well defined and proper purpose in view, will render the trustee responsible for any resulting loss. *Brice* v. *Stokes*, 11 Ves. 324. So, also, as to the discretion committed to the trustee, in the present case, in determining how much money should be appropriated to the support of the beneficiary. It was not to be a mere capricious, unquestioned exercise of the preferences of the trustee, or a ready indulgence of all the wishes of the beneficiary, but a discretion to be employed with a prudent reference to the condition of the estate, and the style of living for which it might be drawn upon without serious detriment to the fund. Taking all these considerations together, it is obvious that the trustee could not, consistently with established rules, sell property for the mere purpose of supplying the beneficiary's wants, unless it were clearly necessary to do so, and susceptible of positive proof that the intentions of the testatrix could be fulfilled in no other way. This brings us to the inquiry whether, in the declarations of the testatrix, there appears an intention that any more than two-thirds of the current income from her estate shall be appropriated to her brother's support; that the capital fund shall be broken in upon by sales, from time to time, and thus the estate be destroyed piecemeal, if it be the pleasure of the beneficiary, with the assent of the trustee, to adopt such a style of living as may render that course necessary; or that the trustee shall be permitted to anticipate beyond both current income and proceeds of sales for the purpose indicated, so that a future disintegration of the estate must be inevitable in order to his reimbursement.

Defendants insist that by the use of the word "proceeds" the testatrix indicated her wish that the money arising from sales, as well as from current income, should be devoted to her brother's support. If this interpretation were true, the result would still fall short of the defendants' claim. It would fail to establish a power to sell for that specific purpose, without any other in view; which power would be indispensable to the propriety of the decree rendered by the Circuit Court. But the term "proceeds," in current acceptation, has a twofold signification. In general, its meaning depends upon the subject-matter. When used with reference to a particular sale, the word applies to the money arising therefrom. But when we speak of the proceeds of a business, or of an estate and its management, we are not supposed to refer to a sale of the business or a sale of the estate. We mean, as to either, its income and profits. Such are the applications in common use, and thus are they clearly distinguished by the lexicographers. The testatrix had occasion to employ the term in both of its applications. When one of these is intended, and when the other, must be determined from the context.

If the canons of equity jurisprudence were silent on the subject of breaking into the capital of a trust-fund, we might still find in the will before us a pretty clear indication of the rule intended by the testatrix herself. One-third of her entire estate is to be eventually conveyed absolutely to the descendants of her deceased sister. The two-thirds remaining may be conveyed away only in the event that her brother shall marry and die leaving issue. The managers of the Roman Catholic orphan asylums of St. Louis are made residuary legatees. But both these last provisions would be nugatory if the *corpus* of the two-thirds should be sold and conveyed away in order to provide for the support of the brother. It is possible to suppose that the testatrix contemplated a partial sale for her brother's support, leaving still a remainder for the residuary legatees. But there

can be no equitable presumption in favor of such a supposition.

It is settled by a large number of adjudications, that trustees for infants should never, without authority from the superintending court, break into the capital of the trust-fund for the maintenance of their wards. 2 Perry on Tr., sec. 618. Even the power of the court to authorize it must be exercised with great caution. A case of clear necessity must appear. But if there be a limitation over to a stranger on the death of the infant, neither the trustee nor the court can expend any part of the capital fund for the maintenance of the ward. *Lee* v. *Brown,* 4 Ves. 362. A rigorous application of these principles to the case before us would exclude any allowance in favor of the trustee, for disbursements to John W. Rice, beyond two-thirds of the rents received, or about $5,500 during the six years of his trusteeship. The beneficiary, it is true, is not an infant. But the discretion committed to the trustee in fixing the amount of his allowance seems to constitute a *quasi* guardianship in this particular, so that little reason appears, in principle, for a special discrimination between the cases.

We think, however, that in view of the large discretion left to the trustee by the testatrix, and of her manifest desire that her brother should be comfortably provided for, a liberal margin should be allowed, without restriction to the absolute needs of maintenance, in fixing the amount to be paid him from time to time. Yet, considering also the express limitation of his allowance to two-thirds of the actual proceeds, etc., of the estate, together with the fact of the residuary bequest, we cannot but conclude that the trustee, in making the allowance exceed the entire proceeds for the time being, and in thus creating a necessity for a diminution of the capital fund, went much beyond the intentions of the testatrix, as these may be gathered from her will. A different view of his powers would permit the trustee to sell the entire two-thirds of the estate in a single

transaction, and pay over the proceeds to the beneficiary. The striking inequality in the periodical payments, as made, might be suggestive of something aside from a systematic supply of the beneficiary's actual wants, even in a liberal form of maintenance. During one period of six months, — from Jan. 1 to July 1, 1871, — these payments amounted to $6,043.82. From Jan. 1 to July 1, 1872, they amounted to $1,664.25. From July 1, 1874, to Jan. 1, 1875, they reached only $888.55, and from July, 1874, until the trustee's death, more than a year afterwards, they reached only $561.10.

It is objected that the plaintiff John W. Rice, having received the benefit of these advances, is estopped to deny their propriety, and, therefore, has no rights to be enforced or protected in this proceeding. It may be true that he can assert no claim against the defendants on the ground that those payments were improper But the error, if any, of the trustee, cannot deprive him of his right, present and future, to a maintenance from the estate. He has a right to an accounting, as prayed for, and is especially interested against a diminution of the capital fund, as demanded by the defendants, and as decreed, contingently, by the Circuit Court.

For the purpose of showing that the other plaintiffs, as legatees, residuary or otherwise, have no such interest as may enable them to maintain the suit, defendants refer us to *Sawyer* v. *Banfield*, 55 N. H. 149. In that case, the testator had bequeathed to a trustee the sum of $9,000, to be employed for the benefit of his widow. It was held that the heirs and residuary legatees had no right to interfere in a proceeding for the appointment of a new trustee. No parallel here appears with the present case. There, the intervening parties had not the remotest interest in the trust-fund. If it had been absolutely destroyed, no right of theirs would have suffered in consequence. But here, the plaintiffs, as holders of a fractional interest in the capital

fund, which is blended with that from which the disburse-
ments in question were made, and as residuary legatees, have
a direct interest in the accounts of the trustee, and in the
results of his management of the common stock.

The judgment will be reversed and the cause remanded.
The Circuit Court, after rendering judgment in favor of
the plaintiffs Laura and Edward Haydel against the estate
of the deceased trustee, for the balance which will be found
due them, will proceed to ascertain from competent testi-
mony what would be a fair annual allowance to John W.
Rice, — neither limiting this to the bare necessities of life,
nor amplifying it to the extent of a luxurious extravagance.
Let the new trustee be directed to reserve from the future
income of two-thirds of the estate all that remains over the
allowance, to be paid from time to time, as realized, or at
fixed periods, to the proper legal representatives of the
deceased trustee, until the amount of his advance to John
W. Rice over his net receipts, after deduction of other
expenditures, including the balance payable to Laura and
Edward Haydel, shall be reimbursed, without interest.
Judge HAYDEN concurs ; Judge BAKEWELL not sitting.