The following cases decided at Tampa, March Term, 1860, were not received by the Reporter in time to be inserted in their proper place in the Reports of that year.

———•••———

ADAM GORDON, APPELLANT, VS. ROBERT CLARKE, SHERIFF OF MONROE COUNTY AND EX-OFFICIO ADMINISTRATOR OF THE ESTATE OF JOHN W. SIMONTON, DECEASED, WILLIAM JONES, FOREIGN EXECUTOR OF THE LAST WILL AND TESTAMENT OF JOHN W. SIMONTON, DECEASED, AND JOHN BARCROFT, TRUSTEE OF SAID JOHN W. SIMONTON, DECEASED, APPELLEES.

Appeal from decree of Court of Chancery, in and for the county of Munroe, in the Southern Circuit.

1. When it is specified in a covenant that it shall be performed "in a short and reasonable time," what is a short and reasonable time is a question of law for the Court, and in determining it, the Court will consider all the facts and circumstances of the case. In this case, seventeen months considered a reasonable time for performance of the covenant.

2. When there is a clear right, and the remedy in a Court of law is not plain, adequate, complete, and adapted to the particular exigency of the case, then, and in such cases, Courts of equity will maintain jurisdiction.

3. It is too late to insist the complainant has a perfect remedy at law, after the defendant has answered a bill and submitted himself to the jurisdiction of the Court without objection, *unless* the Court is wholly incompetent to grant the relief sought by the bill.

4. The statute of Florida clothes foreign Executors and Administrators with authority to bring suits, but does not authorize them to *defend* them.

5. The joinder of an improper party defendant does not affect the jurisdiction of the Court as to the parties before it.

6. If a bill is defective in form, it should be demurred to: it is too late to take that objection before an appellate Court.

Decree reversed and cause remanded for further proceedings.

*O. B. Hart* for Appellant.

*S. J. Douglass* and *James Gettis* for Appellees.

FORWARD, J., delivered the opinion of the Court.

It appears from the record that in the month of August, A. D. 1836, one F. A. Browne purchased of John Barcroft, Trustee of J. W. Simonton, certain tracts and lots of land in the city of Key West. To secure the payment thereof he gave a promissory note, and executed a mortgage on the same tracts and lots of land.

Among the tracts of land thus purchased was one known and described as "Tract No. 1," containing fourteen, (14) acres, of which one undivided third part was owned by the appellant, Adam Gordon, who subsequently, about the 1st January, A. D. 1843, purchased the equity of redemption in the remaining two-thirds of the said tract from said F. A. Browne for the sum of four hundred dollars, ($400), for which he took a deed subject to said mortgage, made by said Browne to said trustee of said Simonton. Of this *tract* No. 1, two acres and eleven-hundredths of an acre were sold to the United States for a Marine Hospital.

It appears that at the time said Gordon purchased the two-thirds of said tract, that there was an opportunity of selling the balance, to-wit: eleven and 89-100 acres to the United States for $300 per acre, amounting to $3567. It is alleged that Browne was anxious to sell his remaining interest in it; that there was competition for the purchase thereof; that Gordon purchased of Browne to prevent difficulty of giving title to the Government, and that he purchased for the benefit of Simonton as well as himself.

However that may be, it clearly appears that the mortgage *lien* of Simonton as *cestui que trust* was an impediment to the giving of title of said lands to the Government, and that it became necessary for John Barcroft, J. W. Simonton and Adam Gordon to unite in a conveyance, to give a perfect title and effect a sale to the United States.

For which purpose they entered into the following covenant, viz:

"Whereas Adam Gordon is the owner in his own right of one undivided third part of tract numbered one, situated on the Island of Key West, and according to Wm. A White-head's survey containing fourteen acres, (two acres and eleven-hundredths of which have already been sold to the United States for a Marine Hospital.) And whereas, about the 1st of January, 1843, the said A. Gordon purchased the remaining two-thirds of the said tract from F. A. Browne, for the sum of $400, subject, however, to a mortgage of the said Browne made to John Barcroft as trustee of J. W. Simonton, dated 22d of August, A. D., 1836. And whereas, there is now an opportunity of selling the same land, eleven and 89-100 acres, to the United States for $300 per acre, amounting to $3567, and as it becomes necessary for John Barcroft, J. W. Simonton and Adam Gordon to unite in a conveyance to give a perfect title and effect a sale to the United States of the said land, *it is agreed* by and between the said John W. Simonton and Adam Gordon, that the moneys arising from the sale of said land shall be divided as follows, to-wit: the said Adam Gordon shall receive one-third part ($1189), and the remainder or $2378 shall be paid to the said J. W. Simonton. But it is *understood and agreed* by the said J. W. Simonton that he will in a short and reasonable time cause the said mortgage, given as aforesaid by the said Browne, to be settled or foreclosed. If the said mortgage shall be paid by the said Browne, or if on foreclosure the mortgage prop-

erty *now remaining* unsold shall be sufficient to settle up said mortgage, *then* the said J. W. Simonton for himself, his heirs, executors and administrators, promises and agrees to pay the said A. Gordon, his heirs, executors, administrators or assigns the said sum of twenty-three hundred and seventy-eight dollars, with interest at the rate of 6 per cent. per annum, and the further sum of six hundred and thirty-three dollars for the sale of the Hospital grounds, to the United States from the same tract of land with 6 per cent. interest from 13th day of November, A. D., 1844. But if the mortgage property *unsold* should not on final sale pay up the said mortgage, after all proper credits are extended thereon, then it is agreed that so much of the said sums $2378 and $633 as is the just and proper proportion of two-thirds of tract No. one, taken in connection with other lots and tracts sold by said Browne, subject to said mortgage, shall be used to pay up the said mortgage, and the balance, if any, of the said sums shall be paid as above to the said Adam Gordon, or to his heirs or assigns.

" And the said John W. Simonton for himself, his heirs, executors and administrators promises and agrees to pay to the said Adam Gordon, his heirs or assigns whatever balance may rateably remain after paying said mortgage and the interest thereon as above."

With this mutual covenant they perfect sale and execute title to the Government.

About a year and five months afterwards, to-wit : on the 16th of April, 1847, the said Browne being unable to pay up his mortgage, entered into an arrangement with said Simonton, whereby it was settled and cancelled. The said Browne re-conveys to the said Simonton the said lands purchased from him and embraced in said mortgage, and takes from said Simonton an agreement, in which said Simonton agrees to confirm the sales made by Browne, and dispose of the

lands *unsold* within four years, and out of the proceeds there-
of pay himself $11,234 11, and any *surplus* over that amount
to pay to said Browne. As this settlement of said mort-
gage, re-conveyance and agreement enter somewhat into the
views of this Court in deciding this appeal, they are hereby
inserted in order that they may be seen, viz :

## EXHIBIT B.

Know all men by these presents, that whereas John Bar-
croft of the City of Washington, District of Columbia, trus-
tee of John W. Simonton and Ann Simonton his wife, did
on the twenty-second day of August, in the year one thou-
sand eight hundred and thirty-six, sell and convey unto me,
Fielding A. Browne, of Key West, Monroe County, Florida,
for the sum of twenty-four thousand five hundred dollars, all
those certain lots, tracts and parcels of land on the Island of
Key West, which are hereafter more particularly described;
and, whereas, to secure to the said John Barcroft, Trustee as
aforesaid, the payment of the said twenty-four thousand five
hundred dollars, the purchase money aforesaid, I, the said
Fielding A. Browne, did, on the twenty second day of Au-
gust, *Anno Domini* one thousand eight hundred and thirty-
six, execute and deliver a good and valid mortgage unto
said John Barcroft, Trustee as aforesaid, of all and singular
the aforesaid lots, tracts and parcels of land hereinafter men-
tioned ; and, whereas, there still remains due and payable
to the said John Barcroft, Trustee as aforesaid, upon the
said mortgage, the sum of eleven thousand two hundred and
thirty-four dollars and eleven cents, which I, the said Fielding
A. Browne, am at present unable to pay. Now, this deed
is expressly made to declare that for and in consideration of
the use and occupation which I have enjoiyed of the lots,
tracts and parcels of land aforesaid, and which are herein-
after described, and of other lots, tracts and parcels of
land, conveyed to me by the deed herein first recited,

executed and delivered by said John Barcroft, Trustee aforesaid, and many of which said lots, tracts and parcels of land, I, the said Fielding A. Browne, have sold and conveyed, aliened and confirmed away, and realized and enjoyed valuable considerations therefor, and in consideration also of the aforesaid sum of eleven thousand two hundred and thirty-four dollars and eleven cents, which is still due and payable from me unto the said John Barcroft, Trustee as aforesaid, and in consideration also of one dollar to me paid in hand before the sealing and delivery hereof by the said John Barcroft, Trustee as aforesaid, and the receipt whereof I do now confess, and am therewith fully satisfied, contented and paid, I, the said Fielding A. Browne, do hereby bargain, sell, deliver, remise, release, alien and confirm, reconvey and forever quit claim unto the said John Barcroft, Trustee as aforesaid, his heirs and assigns, all those certain lots, tracts or parcels of land which were conveyed to me as aforesaid by the deed first herein recited, and which are more particularly known on the plan of the town and island of Key West, delineated by William A. Whitehead, and on file in the office of the Records of Monroe county, as lot No. (2) two, in square No. (1) one, lot No. (1) one, in square No. (8) eight, lot No. (3) three, in square No. (12) twelve, lot No. (3) three, in square No. (13) thirteen, lot No. (2) two, in square No. (14) fourteen, lot No. (2) two, in square No. (20) twenty, lot No. (4) four, in square No. (30) thirty, lot No. (3) three, in square No. (32) thirty-two, lot No. (3) three, in square No. (34) thirty-four, lot No. (1) one, in square No. (36) thirty-six, lot No. (1) one, in square No. (38) thirty-eight, lot No. (1) one, in square No. (40) forty, lot No. (4) four, in square No. (45) forty-five, lots numbers (1 and 4) one and four in square number (48) forty-eight, lot number (2) two, and a half of lot number (3) three bounded on Fleming street in square number (51) fifty-

one, lots number (1 and 4) one and four in square number (56) fifty-six, lot number (4) four in square number (58) fifty-eight, lot number (1) one in square number (60)sixty, lot number (3) three in square number (61) sixty-one, lot number (2) two, excepting a certain portion belonging to Joseph A. Thomson in square number (63) sixty-three. Together with all those other tracts and parcels of land on the said Island of Key West, described and specified on the map and plan aforesaid as tract number (32) thirty-two, containing (6) six acres, tract number (31) thirty-one containing (2) two acres, tract number (20) twenty containing (30) thirty acres, tract number (11) eleven containing (34) thirty-four acres and twenty hundredth parts of an acre, and also eleven acres and forty hundredth parts (11 40-100) of an acre in tract number (3) three, together with all and singular my right, title and interest of every description whatsoever in what is known and denominated among the proprietors of the Island aforesaid as salt pond property, and in addition to the foregoing described lands and property, I also in the same manner bargain, sell, convey, re-convey and forever quit-claim unto said John Barcroft, trustee as aforesaid, all and every species and description of property whatsoever, which I came possessed of by virtue of the said deed and convey-ance hereinbefore first before recited, and which may at the execution hereof remain unsold by me, as fully in all respects as if the same were particularly set forth and described here-in. To have and to hold the above bargained and described lands, with all and singular the tenements, the heredi-taments and appurtenances thereunto belonging or in any wise appertaining, and the reversion, reversions, remainder, remainders, rents, issues and profits thereof; and also, all my right, title, interest, property, possessions, claims and de-mands whatsoever, as well in law as in equity in or to the

24

foregoing described and specified premises, and every part and parcel thereof with the appurtenances forever.

Witness my hand and seal at Key West, this sixteenth day of April, A. D., one thousand eight hundred and forty-seven.

F. A. BROWNE, [SEAL.]

Signed, sealed and delivered in presence of

The words "in square number (51) fifty-one lots number (1 and 4) one and four interlined on the thirteenth line of third page before signing; ninth line first page "four" interlined before signing."

JAMES JOHNSON,
WM. R. HACKLEY.

MONROE COUNTY, SS:

On this 15th day of May, 1847, came F. A. Browne, to me personally known, and acknowledged the foregoing instrument to be his act and deed, for the purposes therein setforth, whereupon the same is admitted of record.

W. C. MALONEY, Clerk.

STATE OF FLORIDA, )
    MONROE COUNTY.  }

I do hereby certify the foregoing to be a true and correct copy taken from Book D, pages 392 and 393 of Monroe County Records.

Witnesss my hand and the seal of the Circuit Court
[L. S.]   of said County, at Key West, this 19th day of
    June, A. D., 1855.

PETER CRUSOE, Clerk.

EXHIBIT C.

Know all men by these presents, whereas on the twenty-second day of August, A. D., one thousand eight hundred and thirty-six, Fielding A. Browne of Key West, did purchase from John Barcroft, trustee of John W. Simonton and Ann Simonton, certain lots, tracts and parcels of land on the Island of Key West; and whereas, to secure the payment for

the same unto said John Barcroft, trustee, the said Fielding A. Browne did on the same day execute his several promissory notes, together with a mortgage upon all the said lots, tracts and parcels of land which said conveyance from John Barcroft to Fielding A. Browne, and said notes and mortgage from Fielding A. Browne to said John Barcroft, are recorded in the office of the county records of Monroe County, Florida, and are herein referred to; and whereas the payments stipulated for in the said mortgage have not been made, and there still remains due and payable from said Fielding A. Browne to said John Barcroft upon the same eleven thousand two hundred and thirty-four dollars and eleven cents; and whereas, the said Fielding A. Browne has by an instrument of writing bearing even date herewith, forever remised, released, conveyed, aliened, confirmed and quit-claimed unto said John Barcroft all his right, title, interest, claim, property and demand of every nature whatsoever, either in law or in equity, in and to the said lands which are particularly described and set-forth in the said instrument of writing bearing even date herewith. Now, therefore, this is to declare, that I, John W. Simonton, of Key West, Florida, *cestui que trust* of said John Barcroft, in consideration of the execution and delivery of the said instrument of writing and quit-claim, do covenant, stipulate and agree to and with the said Fielding A. Browne, his heirs, executors and administrators, that I, my heirs, executors and administrators shall and will, within four years from the date hereof, I or they will sell, convey and finally dispose of all the said lots, tracts and parcels of land, which are specified in said instrument of writing and quit-claim, to the best advantage and in such a manner that the proceeds arising or to arise, accruing or to accrue from the same, shall be realized by me within the said four years, and that out of the proceeds is first to be paid the aforesaid eleven thousand two

hundred and thirty-four dollars and eleven cents, which is due and payable from said Fielding A. Browne upon the aforesaid mortgage, whatever that sum may justly be, to be carefully computed, and that the balance or surplus which may remain after I shall have so paid the said sum due, shall be within the said four years paid over to said Fielding A. Browne, his heirs, executors or administrators; and I do further hereby and forever release the said Fielding A. Browne, his heirs and assigns from all claims or demands of every nature whatsoever, which the said John Barcroft, trustee as aforesaid, had or may have had against or upon him for and on account of his said mortgage.

In testimony whereof I have hereunto set my hand and seal at Key West, Florida, on this sixteenth day of April, A. D. one thousand eight hundred and forty-seven.

(Signed)           J. W. SIMONTON, [L. s.]

Signed, sealed and delivered in presence of

[Signed]          JAMES JOHNSON,
                  WM. R. HACKLEY.

STATE OF FLORIDA, }
    MONROE COUNTY. }

On this 25th day of May, A. D. 1847, before me, the subscriber, clerk of the Circuit Court of said county, personally came John W. Simonton, to me personally known, and acknowledged the foregoing instrument to be his act and deed for the purposes therein set forth; whereupon the same is admitted of record.

(Signed)           W. C. MALONEY, Clerk.

Duly recorded 25th May, 1847.

STATE OF FLORIDA, }
    MONROE COUNTY. }

I, the undersigned clerk of the Circuit Court of Monroe county, certify the foregoing to be a true and correct copy

taken from Book D, pages Nos. 415 and 416 of Monroe county records.

[L. s.] Witness my hand and seal of said Court at Key West, this sixth day of April, A. D. 1855.

PETER CRUSOE, Clerk.

It will be here observed that the appellant, Gordon, is no party to this arrangement between said Browne and Simonton, and that it was entered into a long time *subsequent* to the covenant in issue in this cause. The said Simonton having cancelled this mortgage, and secured title in the *unsold* lands in himself, he proceeds to dispose of them.

According to the report of the master, found in the record, it appears that since the reconveyance of said Browne to Simonton, there has been sold by said Simonton and his representatives since his death, the amount of $11,566.67, and that there remains yet unsold lands of the value of $2,130.

To recover from the estate of Simonton the said sums of $2,378 and $633, with interest, in said covenant between said Gordon and said Simonton mentioned, this bill of complaint was filed.

The bill sets forth the transaction between the parties, the settlement of the mortgage, the reconveyance by Browne to Simonton; charges that the said Simonton " disregarded his covenant in not causing said mortgage to be settled or foreclosed in a short and reasonable time," and in not paying him said sums; avers that lands sufficient to pay said mortgage, according to their covenant, had been sold by said Simonton and his representatives, and avers that he is unable to arrive at the amount of said sales without discovery, and prays for an injunction on account of the amounts realized from the sale of said lands since said covenant with said Gordon, and that the defendants or either of them as shall seem meet to the Court, be decreed to pay the appellant the sums of money covenanted to be paid according to said

190          SUPREME COURT.

Adam Gordon vs. Estate of John W. Simonton, deceased.—Opinion of Court.

agreement specifically, and that in default thereof, all of the said lands mentioned in said covenant, which remained unsold at the *date of said deed of release* from said Simonton to said Browne, his heirs and assigns, or which remained unsold at the time of the receipt by said Simonton, or of defendants or any of them, of sufficient money from sales of said unsold lands to pay the amount due on said mortgage at the *date of the covenant*, be sold to pay the said appellant the said sums with interest.

Answers were put in by the defendants, Robert Clarke and William Jones; the said John Barcroft, being a nonresident, service of process upon him was made by publication of order of Court, and he not appearing, a decree pro confesso was entered against him. Replications to the answers were filed, and testimony taken, report of Master filed, and cause set down for hearing.

Thereupon the Judge of the Circuit Court made the following decree:

" This cause having come on to be heard on the pleadings and proofs, and arguments of Counsel having been heard therein, and the Court having considered the same and being advised of its decree to be rendered therein, and it appearing to the Court that the complainant has failed to sustain the allegations of his bill and the issues of fact joined in the cause and is therefore not entitled to the decree prayed for in his said bill: *It is adjudged and decreed* that said bill be dismissed, and that the complainant pay the costs of this suit."

From this decree appeal is taken to this Court. The errors assigned are:

First. The Circuit Court erred in deciding that the event upon which Simonton was to pay Gordon the said sums of $2378 and of $633 and the interest, was the sale of enough of the lands included in the mortgage to pay the price agreed

to be paid by Browne for them ; and that by the agreement it appears that interest was to be paid on the mortgage debt.

Second. The Circuit Court erred in considering that interest was to be paid on the said sum of $11,234 11.

Third. The Circuit Court erred in dismissing the bill.

Whether there is error in said decree or not will be determined in the construction of the instrument in writing called " covenant" between said Appellant (Gordon) and said Simonton.

In construing this instrument we are to arrive at the intention of the parties from considering the whole instrument, and the true situation, rights, interests, and remedies of the parties at the time it was executed, as well as the subject matter thereof.

What were the rights, claims and remedies of the parties at that time ? At the time they, the said Gordon and Simonton, entered into said covenant, to-wit : the 22d of Nov. 1845, the said Gordon having the equitable title to the whole of said tract No. 1, was entitled to the said sum of $3567, to be paid by the Government, and was entitled to $633, his share received from the sale of the Hospital grounds. But Simonton had a lien thereon, together with the other tracts for the satisfaction of his mortgage. The mortgage embraced other lands not yet sold. Mr. Gordon being assignee of Browne might have filed a bill in equity, instead of entering into said covenant, and compelled partition of the tract, and forced said Simonton to foreclose his mortgage, and insisted that the interests of Browne, the mortgagor in the remaining tracts and lots of land embraced in said mortgage, should be *first* sold, and the amount realized therefrom applied to the satisfaction of the mortgage.

This being then the equitable remedy of said Gordon, if resorted to, it appears to us that the same thing was provided in this covenant, although upon certain terms therein ex-

pressed. Mr. Simonton *agrees*, and it is so "understood and agreed, *that he will, in a short and reasonable time, cause the said mortgage given as aforesaid by the said Browne to be settled or foreclosed. If the said mortgage shall be paid by the said Browne, or if on foreclosure the mortgaged property* NOW REMAINING UNSOLD *shall be sufficient to settle up said mortgage,* THEN *the said J. W. Simonton, for himself, his heirs, executors and administrators, promises and agrees to pay the said A. Gordon, his heirs, executors and administrators or assigns, the said sum,* &c. But if it is not satisfied, that is to say, if said Browne does not pay up said mortgage, or if on foreclosure the mortgaged property, *now remaining unsold*, shall not be sufficient to pay up said mortgage, (which the said Simonton agrees shall be settled or foreclosed within a short and reasonable time,) then a *pro rata* proportion to make up the deficiency is to be thus applied.

In consideration of this, the said Gordon agrees to let the two amounts therein named be applied on the mortgage, the said Simonton promising to pay said Gordon whatever rateable balance may remain after paying said "*mortgage and the interest thereon as above*," that is to say, the balance and interest which may be due thereon, when a *short and reasonable time* shall have elapsed wherein the said Simonton should cause the said mortgage to be settled or foreclosed, and they, under this understanding, unite in a conveyance to the Government.

By this arrangement it will be seen the said Gordon runs the risk of losing his $400 paid Browne for his equity of redemption in the two-thirds of said tract, and he also runs the risk of the remaining unsold lands bringing enough to pay the mortgage, and obtains a contingent benefit.

We think this the clear intention of the parties, and the legal and proper construction under the circumstances un-

der which it was executed. Having thus construed this instrument, the next enquiry presenting itself is, what length of time is a "short and reasonable time," or when was this covenant to be performed, and up to what time is this mortgage to draw interest, as between said Simonton and Gordon under said covenant?

It is laid down in Parsons on Contracts, vol. 2, page 47, that "what is a reasonable time" is a question of law for the Court.

"They will consider all the facts and circumstances of the case in determining this."

In the covenant under consideration, it is expressed "*in a short and reasonable time*," the parties seem to have qualified it by making it "*short*."

The facts and circumstances of the case are expressed in the covenant. The mortgage was to be settled or foreclosed. In either event one year would be reasonable. If it was to be foreclosed it could be done in a year. It seems to us that the said Simonton, by his subsequent acts, fixed the time. He settled the mortgage with said Browne on the 16th April, A. D. 1847; on that day we think the INTEREST on said mortgage as between Gordon and said Simonton ceased to run, according to said covenant.

It follows, that the decision of this Court is, that as between Gordon and Simonton, the amount of principal and interest due on the said mortgage on the 16th April, A. D. 1847, was the amount intended by them, and that the Master, to whom this cause was referred in the Court below, should have been instructed to compute the amount due thereon, for principal and interest, up to that date, deducting of course all prior payments. It seems that said Simonton so understood it, for in his agreement with said Browne he covenants "*that out of the said proceeds*" is first to be paid
25

194 SUPREME COURT.

Adam Gordon vs. Estate of John W. Simonton, deceased.—Opinion of Court.

the aforesaid eleven thousand two hundred and thirty-four dollars and eleven cents, which is due and payable from said Fielding A. Browne upon the said aforesaid mortgage, *whatever that sum may justly be, to be carefully computed*, and the balance or surplus which remain after I shall have so paid the said *sum* due, shall be within the said four years paid over to said Fielding A. Browne, &c. Now, if the said appellant, Gordon, was to be postponed until the lands were all sold, how could such an agreement have consistently been made with Browne? It is claimed by the appellees that the amount due on the mortgage was fixed by the settlement between said Browne and Simonton in 1847. This may be true as between themselves, but it will be remembered that the said Gordon was no party to said arrangement, that he did not agree to any said amount. And for all this Court knows or Gordon knows, the calculation of interest as well as payments may have been erroneous.

The interest may have amounted to compound interest; at any rate, that amount is not from anything that appears upon the record binding upon said Gordon.

Here we think the Court erred. The Master should have been instructed to ascertain the amount due on the mortgage at that date, irrespective of any arrangement between said Browne and Simonton.

The Court below seems to have blended the transactions and agreements between said Browne and Simonton, with the covenant between Simonton and Gordon, and thus fallen into the error respecting the time in which interest ceased on the mortgage as between them, and erroneously presumed the amount due on the mortgage, according to said covenant, to be $11,234.11, on the said 16th April, 1847. This may turn out to be the true amount then due, but it should, as between said Gordon and the estate of Simonton, be calculated and not assumed.

It was contended by Mr. Gettis, Solicitor for appellees, on the argument of this cause, that this Court may, on appeal, examine the whole case, and that the Court below had no jurisdiction of this cause, because the appellant had an effectual and complete remedy at law.

This objection, (if there was anything in it,) comes too late. The defendants, Clarke and Jones, have submitted to the jurisdiction of the Court by answering the bill; they should have demurred if they wished to contenst the jurisdiction of the Court. The other defendant, Barcroft, has permitted a decree *pro confesso*, and made no application to open it. Grandin vs. LeRoy, 2 Paige, 509.

Irrespective of this, in view of the nature and objects of this bill, we think it one of equity jurisdiction.

The rule is that where there is a clear right, and the remedy is not plain, adequate and complete, *and adapted to the particular exigency of the case*, in a Court of law, then and in such cases, Courts of equity will maintain jurisdiction.

Accounts and discovery was asked by this bill, which, by the nature of the case, could not be obtained in a satisfactory manner in a Court of law.

The Solicitor for appellees also insisted that there was a misjoinder of parties, and therefore the decree of the Court below was correct in dismissing the bill. On this point it was urged that the record disclosed the said Jones, one of the appellees, to be an Executor under foreign Probate of the will of Simonton, and the said Clarke, ex-officio Administrator of said estate of Simonton in Florida; that there could not be two representatives of the estate at the same time, and that, therefore, there was a misjoinder of parties defendant.

We think as the said Jones had never taken out letters testamentary in Florida, the said Administrator is the proper

196                    SUPREME COURT.

Adam Gordon vs. Estate of John W. Simouton, deceased.--Opinion of Court.

representative of any estate of said Simonton in this State, consequently there is a misjoinder.

In the absence of any statute, the well settled rule is, that a party cannot sue or defend in our Courts, as Executor or Administrator, under the authority of a foreign Court of Probate, for the reason our Courts will not recognize the personal representative of the deceased, in his representative character, unless clothed with authority derived from our law. Story's Conflict of Laws, section 514, and note.

The statute of our State does clothe foreign executors and administrators with authority to bring suits, but does not authorize them to defend suits. Thompson's Digest, page 349.

We think therefore Jones is not a proper party defendant, and that the said Clarke is the proper administrator, and that any decree in this cause should be against the assets of said estate in the hands of said Clarke to be administered.

This joinder of an improper party cannot affect the jurisdiction of the Court as to the parties properly before it.— Carmael vs. Banks, 10 Wheaton, 181; Wormley vs. Wormley, 8 Wheaton, 421.

There are parties properly before the Court sufficient for decree in this cause.

It was also urged by Solicitor of appellees, that the bill was defective for matters of form, and that therefore the decree dismissing the bill was correct.

If a bill is defective in form, it should be demurred to ; it is too late to take that objection before an appellate Court.

We are of the opinion that there is error in the decree of the Court below, and that the same should be reversed and set aside, and this cause remanded to the Circuit Court of Monroe County, with instructions that the cause be again referred to a Master, to ascertain and compute the amount due on said mortgage for principal and interest on the 16th

April, 1847; the amount due said Gordon on the said two sums in said covenant mentioned for principal and interest up to the making of his report, and that upon the confirmation of said report, together with the report setting forth the amount realized from the sale of said lands, and likely to be realized, already confirmed, the Court below do decree to be made, like any other debt against the estate, out of the assets of said estate in the hands of said administrator to be administered, the said two sums of $2378 and $633 with interest as expressed in said covenant, and as the said Simonton in his lifetime agreed to do.  If the Court shall find the amount thus due on the mortgage has been realized from the sale of said lands, or likely with proper management to be realized from the sale of those unsold, together with what has been sold covered by said mortgage, and if the amount thus found due on said mortgage is not realized or likely to be realized, then, to decree to be made as aforesaid a *pro rata* rateable amount, according to the agreement in said covenant.

The decree of the Circuit Court is therefore reversed and set aside, and this cause remanded to the said Circuit Court for such other and further proceedings and decree as that Court shall deem right and proper, according to the principles of equity, between said parties, conforming in said proceedings and decree to the instructions and principles laid down and established by this Court, in said cause, and that the appellant recover from the appellees his costs herein expended.