JULIAN W. HAYDON v. HANNAH REBER WELTMER, et vir.

187 So. 772.
Division B.
Opinion Filed April 4, 1939.

*George P. Garrett* and *Ellis F. Davis,* for Appellant;

*O. Preston Johnson* and *Murray W. Overstreet,* for Appellees.

PER CURIAM.—This appeal brings for review a final decree holding, in effect, that equity may order restoration of personal property, having sentimental value or antiques that cannot be replaced, to one entitled thereto under the provisions of a will.

Kitty Ann Rozycki died in St. Cloud, Florida, March 3, 1933, at the age of 93, leaving a last will and testament wherein she gave to her niece, Hannah Reber Weltmer, a remainder in fee simple, after a life estate to her husband, Stephen Rozycki, in all property owned by her at her death. She made her husband the executor of her will. Her husband survived her and took a life estate in the property. When the property was listed for appraisal, only three bank accounts, in three different banks, were listed. On April 11, 1935, Stephen Rozycki made a bll of sale of certain furniture, household goods and sundry articles to Julian W. Haydon, which bill of sale was recorded. This property was later claimed by Hannah Reber Weltmer to be part of the estate of Kitty Ann Rozycki. On September 23, 1935, Stephen Rozycki died, leaving a will in which he left all of his property to Julian W. Haydon.

After the death of Stephen Rozycki, Hannah Reber Weltmer filed her bill of complaint and later her amended bill, praying that equity take jurisdiction of the cause, and

decree that the bill of sale from Stephen Rozycki to Julian W. Haydon conveyed only the life interest in the property; that fee simple title in the same is in plaintiff, and that defendant deliver up possession of the same to plaintiff forthwith.

The amended bill alleged that during her lifetime, Kitty Ann Rozycki had an independent income, and was possessed at her death of certain described personal property which constituted her separate property, valued at $1,000.00, which consisted of furniture, household goods and jewelry, and which Stephen Rozycki, as Executor, failed to account for in the administration of her estate; that a life interest became vested in Stephen Rozycki under the terms of the will of Kitty Ann Rozycki; and after his death, fee simple title vested in Hannah Reber Weltmer; that during the latter years of the life of Stephen Rozycki, Julian W. Haydon became familiar with him and with his business affairs; that on April 11, 1935, Stephen Rozycki executed to Julian W. Haydon, without consideration, a bill of sale to this questioned personal property, which was recorded; that Julian W. Haydon is now in possession of and claims title to said property; that since September 23, 1935, plaintiff has been the owner of said property in fee simple, which articles are "antique and/or heir-looms and have a sentimental value to complainant that far exceeds their actual value to complainant, and if sold or disposed of, could not be replaced or adequately compensated in damages."

Motion to dismiss and motion for bill of particulars were both denied by the court.

The answer denied the material allegations of the amended bill of complaint, and prayed that the amended bill be dismissed.

Motion to strike portions of the answer was denied.

Bill of particulars was filed, describing more particularly

the articles described in paragraph two of the amended bill of complaint.

Testimony was taken and exhibits were filed before Hon. Frank A. Smith, Circuit Judge. The Court, after considering the evidence and the argument of counsel, entered final decree finding that there was equitable jurisdiction in the court on the facts as disclosed in support of the amended bill, and that plaintiff is entitled to relief on the merits of the case; that the property described in the amended bill belonged to Kitty Ann Rozycki at the time of her death, and passed to plaintiff under her will, subject to a life interest in Stephen Rozycki, and is now in the possession of Julian W. Haydon; that Stephen Rozycki died September 23, 1935; that only a few of the articles are antiques and cannot be replaced, but a great number of the articles have a sentimental value to plaintiff, the niece of Mrs. Rozycki, and that each of said parties had a deep affection for each other; and that plaintiff is entitled to recover possession of property having a sentimental value or antiques which cannot be replaced and is therefore entitled to recover possession of all of said described property. The final decree ordered as follows:

"It Is THEREFORE ORDERED, ADJUDGED and DECREED by the Court that on March 3rd, 1933, Kitty Ann Rozycki died possessed of the following described property, which is likewise described in the Amended Bill of Complaint and is now in the possesion of the Defendant, Julian W. Haydon, in St. Cloud, Osceola County, Florida, to-wit:

"Two oak rocking chairs; 5 dining room chairs; 6 silk bottom parlor rocking chairs; 1 cane bottom rocking chair; 1 large dining room table; 5 round and square small tables; 2 parlor sofas; 2 beds; 1 tall clock; 1 small clock; 1 chiffonier; 2 dressers; 1 large stand; 4 large mirrors and all small mirrors; 1 buffet; 1 china closet; 5 oil paintings; 28

pictures; 1 standing lamp; 1 lamp stand; 6 bronze candle sticks; 2 vases; all dishes and china-ware and cut glass and all silver-ware, complete; all water and tea sets, silver and copper, complete; 1 large square brass hearth and mantle protector; all silver household equipment of every nature; 1 writing desk; all jewelry; including 2 bracelets, 2 rings with 3 stones each, one long gold chain with locket, 2 bar pins, 1 monogramed gold brooch, and 1 string of coral beads.

"And that title to all of said property passed by the last Will and Testament of the said Kitty Ann Rozycki to the complainant, Hannah Reber Weltmer; subject to a life interest in and to same in Stephen Rozycki.

"It Is FURTHER ORDERED, ADJUDGED and DECREED that the Bill of Sale dated April 11, 1935, from Stephen Rozycki to Julian W. Haydon, which was recorded among the public records of Osceola County, Florida, on April 11, 1935, in Miscellaneous Book 'O,' page 111, conveyed to the said Julian W. Haydon only the life interest of the said Stephen Rozycki in and to the hereinabove described property, and that the said Stephen Rozycki died on September 23, 1935, and that the said Hannah Reber Weltmer is now the owner of fee simple title to the said hereinabove property.

"It Is FURTHER ORDERED, ADJUDGED and DECREED that as the owner of the fee simple title to the hereinabove described property, the said Hannah Reber Weltmer is entitled to possession and use of same, and the said Julian W. Haydon be and he is hereby authorized, directed and commanded to forthwith deliver up possession of the hereinabove described property to the said Hannah Reber Weltmer."

From this final decree, Julian W. Haydon took an appeal. Appellant contends that this was not a case for equity jurisdiction, because it involved the recovery of personal

property in specie, and the remedy at law should be employed.

In the case of Burr v. Bloomsburg, 101 N. J. Eq. 615, 138 Atl. 876, decided by the Court of Chancery of New Jersey, jurisdiction of equity was held to be maintainable when complainant brought her bill in equity to recover possession of a diamond ring from her deceased brother's widow, who claimed it by virtue of her husband's will, and to which ring complainant claimed she was entitled under a death-bed disposition made of it by her father, Robert Bloomsburg, who said, "This is the last gift, Jennie, I will ever give you. If you are hungry, you can sell it for food; if not, it goes to Mary, then to Pud, and then to baby." "Pud" was the complainant. After acquiring the ring in due course, according to the plan of her father, complainant loaned the ring to her brother George, who never returned it and after he died his widow claimed it. The Court of Chancery in that case went fully into the history of why equity takes jurisdiction in that class of cases, and said:

"Undoubtedly 'this court has jurisdiction to enforce the restitution or delivery of a specific chattel which has a peculiar artificial value, and for which therefore adequate compensation cannot be obtained at law; and that, too, whether possession has been got by the wrongdoer through a trust or not.' Pattison v. Skillman, 34 N. J. Eq. 344. The same principle was involved in the later cases of Schrafft v. Wolters, 61 N. J. Eq. 467, 48 A. 782; Bindsel v. Smith, 61 N. J. Eq. 654, 47 A. 456; Motley v. Darling, 86 N. J. Eq. 185, 98 A. 384. This jurisdiction has been exercised by the Court of Chancery since very early times.

"The earliest leading case on the subject, and perhaps the one most frequently cited, is Pusey v. Pusey, 1 Vernon 273 (1684). That case involved the possession of a

horn anciently given to the Pusey family by the Danish
King Canute and which time out of mind had gone along
with the plaintiff's estate. The horn bore this inscription:

"Kyng Knowd geve Wyllyam Pewse This horne to hold,
by they lond.'

"It was held the bill was maintainable for the recovery
of the specific chattel. The next reported case pertinent
to this inquiry, and to which my attention has been di-
rected, is Duke of Somerset v. Cookson, 3 P. Wms. 389
(1735). It involved the possession of an old silver patera
bearing a Greek inscription and dedication to Hercules,
which had been dug up on the plaintiff's estate. It had
come into defendant's possession, and the Duke brought a
bill in equity to compel its delivery in specie undefaced.
Defendant demurred on the ground that the remedy was at
law, but the demurrer was overruled. In Fells v. Read, 3
Vesey, 70 (1796), a suit was brought to recover a tobacco
box of a remarkable kind which had belonged to a club,
and the Lord Chancellor stated the reason of the equitable
remedy as follows:

" 'The Pusey horn, the patera of the Duke of Somerset,
were things of that sort of value, that a jury might not
give two-pence beyond the weight. It was not to be cast
to the estimation of people, who had not those feelings. In
all cases, where the object of the suit is not liable to a
compensation by damages, it would be strange, if the law
of this country did not afford any remedy. It would be
great injustice, if an individual cannot have his property
without being liable to the estimate of people, who have
not his feelings upon it.'

"In the later case of Nutbrown v. Thornton, 10 Vesey,
163, Lord Eldon, speaking of the Pusey Horn Case, said:

" 'It turned upon the *pretium affectionis,* independent of

the circumstances as to tenure, which could not be estimated in damages.'

"Numerous English and American cases involving this principle of equitable jurisprudence will be found cited in the note to Pattison v. Skillman, *supra,* and in the note to Section 12, page 33, *et seq.,* of Pomeroy's Specific Performance of Contracts (3rd Ed.)  A well considered American case involving this principle is McGowin v. Remington, 12 Pa. 56, 51 Am. Dec. 584 (1840).  The opinion in that case contains a learned discussion of the doctrine and its reasons.  Justice Bell, speaking for the Supreme Court, of Pennsylvania, said:

" 'Such articles as these are commonly esteemed not altogether, or perhaps at all, for their intrinsic value, but as being objects of attachment or curiosity, and, therefore, not to be measured in damages by a jury, who cannot enter into the feelings of the owner; so too the impossibility, or even great difficulty of supplying their loss, may put damages out of the question as a medium of redress.  But these are not the exclusive reasons why chancery interferes, for there may be cases where the thing sought to be recovered is susceptible of reproduction or substitution, and yet where damages could not be so estimated as to cover loss or compensate its future consequent inconvenience.  And I take it this is always so, where, from the nature of the subject-matter or the immediate object of the parties, no convenient measure of damages can be ascertained; or, where nothing could answer the justice of the case but the performance of a contract in specie.

'But there is another ground upon which this procedure may be sustained.  In Falls v. Reid, the snuff box was deposited with the defendant, as a member of the society, upon certain terms, to be redelivered upon the happening of certain events.  Lord Rosslyn held that under these facts,

the defendant was a depositary on an express trust which, upon a common ground of equity, gave the plaintiff title to sue in that court; and in this he was supported by Lord Eldon, in the subsequent case of Nutbrown v. Thornton. * * * It is then the case of direct confidence violated; a spell sufficiently potent to call into vigorous act.vity the authority invoked.'

"In Pomeroy's Specific Performance of Contracts, *supra,* the rule is expressed as follows:

" 'It is well settled that where chattels have some special peculiar value to their owner over and above any market value which could be placed upon them in accordance with strict legal rules, an interest wh ch h is happily been termed *pretium affectionis,* such as an heirloom; * * * contracts concerning them will be specifically enforced in equity, and a delivery of them will be decreed, although they might be recovered in the common-law actions of detinue or replev.n. The reasons of this rule are the utter. inadequacy of any mere pecuniary compensation, and the incompleteness of the relief afforded by the legal actions in which the defendant might easily evade an actual delivery of the chattel itself. * * * The equitable jur.sdiction has not been confined to contracts; it is freely exercised to enforce the surrender and delivery of chattels in specie which have been tortiously obtained, or are wrongfully detained. * * * Equity, however, will not interfere to specifically enforce a contract concerning even such a spec.al and unique chattel, or to compel its delivery, when its pecuniary value has already been fixed by the parties or can be readily ascertained, so that an adequate compensation in the form of debt or damage can be recovered in a legal action.'

"In Lining v. Geddes, 1 McCord Eq. (S. C.) 304, 16 Am. Dec. 606, after referring to the old English cases of

the Pusey horn, the silver altar piece, the silver tobacco box, the carved cherry stone, and others, the court said:

" 'These are cases which have their foundation in the refinement of society, and those affections of the heart, which it would be a reproach to the country not to indulge. But still they depend on the plain tangible principle, that there is no adequate remedy at law, and the principle must not be extended to cases founded in weakness and folly.'

"Judge Story, in his work on Equity Jurisprudence (11th Ed.) Vol. 1, p. 757, Sec. 709, says:

" 'But there are cases of personal goods and chattels, in which the remedy at law by damages would be utterly inadequate, and leave the injured party in a state of irremediable loss. In all such cases, courts of equity will interfere, and grant full relief, by requiring a specific delivery of the thing which is wrongfully withheld.

" 'This may occur, where the thing is of a peculiar value and importance; and the loss of it cannot be fully compensated in damages, when withheld from the owner; and then relief will be granted in equity. * * * (The same rule has been applied to a "box of jewels," to "mortgage deeds," to "slaves," to "furniture and household effects," to "bank shares.") The same principle applies to any other chattel, whose principal value consists in its antiquity; or its being the production of some distinguished artist; or in its being a family relic, ornament, or heirloom; such, for instance, as ancient gems, medals, and coins; ancient statues and busts; paintings of old and distinguished masters; and even those of a modern date, having a peculiar distinction and value, such as family pictures and portraits, and ornaments, and other things of a kindred nature.'

"In 24 R. C. L. 294, Sec. 104, the rule is stated as follows:

" 'Specific performance will be decreed and a contract enforced in regard to personal property which has a sen-

timental or peculiar and unique value over and above its pecuniary or intrinsic value.'

"And in 36 Cyc. 557:

" 'A chattel may have a special value to the owner because of his sentimental interest in it, a *pretium affectionis.*'

"In 5 Ann. Cas. 270, will be found a note citing many cases dealing with this subject. It is there said:

" 'Where articles of personal property or peculiar and individual in character, or having an especial value on account of associations connected with them—such as pictures, curiosities, heirlooms, family relics—or from some other cause are not measurable by a money standard, specific performance is generally decreed, as the only adequate remedy the case is susceptible of.' "

"And in that same opinion the Court of Chancery of New Jersey also said:

"It is also argued by defendant that the complainant has an adequate remedy at law, and that there is no evidence to show that this ring has any 'special character or unique feature' which would render money damages in a suit at law inadequate. But, as was said by Justice Bell in McGowin v. Remington, *supra.*

" 'The thing to be guarded against, is not the invasion of the defendant's rights, for he stands here absolutely without any, except the common interest every citizen has in preserving the proper line of distinction that divides the jurisdiction and limits the powers of the several courts. What is to be avoided is an unnecessary trespass, upon the province of the common-law tribunals, and this is to be tested by the simple query whether they offer a full remedy for the wrong complained of.'

"It is also insisted that mere sentiment or personal desire for a particular object affords no basis for an equitable action such as this.

That may be true as an abstract proposition; but when that sentiment or desire is based upon or born of facts and circumstances which endow the chattel with a special, aside from its intrinsic, value, to the extent of a *pretium affectionis,* it is not true. In such cases there is and can be no measure of damages in money. While this ring itself, as a piece of jewelry, may have a definite value in dollars and cents, how can the sentiment, the imaginary value put upon it by complainant's fancy, because of her affection for the one from whom she obtained it, be valued in terms of money any more than could a value be placed upon the 'touch of a vanished hand' or 'the sound of a voice that is still?' The real question here is whether or not this ring has a *'pretium affectionis.'* If it has, whether because of sentiment, desire, or what not, provided it be real, 'not * * * founded in weakness and folly' (Lining v. Geddes, *supra*), and not assumed for the occasion, then this court has jurisdiction, and relief should not be denied."

Where the remedy at law is not full, adequate and complete, or where complete relief at law is doubtful, and a more ample and appropriate remedy may be thereby afforded, equity will take cognizance, and give relief, if it can be done in accordance with recognized principles of chancery jurisdiction and procedure. See Carter v. Bennett, 6 Fla. 214; Gordon v. Simonton, 10 Fla. 179; Rentz v. Granger & Lewis, 64 Fla. 445, 60 So. 221.

In this case, the chancellor found that some of the articles described in the amended bill were antiques, and some of them had a sentimental value to plaintiff. The amended bill alleged and there was evidence to support the allegation, that these articles have a sentimental value to plaintiff that far exceeds their actual value. Under this theory of the case then, the chancellor was warranted in assuming jurisdiction of the cause. The chanceellor's find-

ing that some of the articles did have sentimental value is supported by substantial evidence, and we are not warranted in disturbing that finding. Having assumed jurisdiction on this theory, the chancellor could retain it for all purposes, determine all matters presented and do complete justice as between the parties. See Doggett v. Hart, 5 Fla. 215, 58 Am. Dec. 464; Sommers v. Apalachicola Northern R. Co., 75 Fla. 159, 78 So. 25; Sanders v. Alford Brothers Co., 92 Fla. 718, 111 So. 278; Donegan v. Baker & Holmes Co., 73 Fla. 241, 74 So. 202; Szabo v. Speckman, 73 Fla. 374, 74 So. 411, L. R. A. 1917D 357; Farrell v. Forest Investment Co., 73 Fla. 191, 74 So. 216; 1 A. L., R. 25; Commercial Bank of Ocala v. First National Bank of Gainesville, 75 Fla. 634, 79 So. 446; Commercial Bank of Ocala v. First National Bank, 80 Fla. 685, 87 So. 315.

It is also contended that the husband must be joined as a co-plaintiff with his wife, not "as next friend," but "as husband."

Plaintiff was "joined by her next friend and husband Harvey G. Weltmer." As a general rule a married woman sues in equity by her next friend. Certain statutory exceptions, Secs. 4203, 4204, 5870 and 5871 C. G. L., permit her, in certain cases, to proceed alone as party plaintiff, but this case does not involve one of those exceptions. Where the general rule applies, as here, and plaintiff married woman sues by her next friend, such next friend may very properly be her husband, if he is not adversely interested. Edgar v. Bacon, 97 Fla. 679, 122 So. 107; Miami Jockey Club v. Aiken, 120 Fla. 544, 163 So. 51. Although the style would have been more exactly correct if the word "joined" had been omitted therefrom, yet, as it stands, it is sufficient to show that plaintiff was proceeding by her next friend, her husband, and is sufficient to withstand attack in this regard.

It is next contended that the inventory and appraisal signed by the husband of plaintiff, as one of the appraisers, failed to show that Kitty Ann Rozycki, left any property except three bank accounts; and that plaintiff is bound by that inventory and appraisal because her husband signed it.

Although it may be true that the acts of the husband in regard to the wife's property are binding on the wife, yet when not acting in regard to the property of his wife, his acts as the agent or representative of another ought not to bind the wife. In signing the inventory, Harvey G. Weltmer was not acting as agent of his wife and was not acting in regard to her property, but was acting as an officer or appraiser of the County Judge's Court in regard to the property of the Estate of Kitty Ann Rozycki, deceased. The inventory was also signed by J. K. Conn and Stephen Rozycki, Executor. It is the duty of the executor to make an inventory of the assets of the estate of decedent. (Sec. 107 of Chapter 16103, Acts of 1933) Sec. 5541 (79) C. G. L. After the granting of letters testamentary, the county judge has a duty to appoint two or more competent persons, not of kin to the deceased, as appraisers, who shall take oath "truly and justly to view and appraise, according to the best of their ability, all the property of the decedent, which to them shall be produced or which shall come to their knowledge." (Sec. 108 of Chap. 16103, Acts of 1933) Sec. 5541 (80) C. G. L. Thus where the property was not presented to the appraisers for appraisement and they had no knowledge that other property belonging to the estate was not included in the inventory, their duty had been fully discharged; by appraising what was presented to them and the appraisal though valid as to those articles included, was not conclusive as to those articles not included therein. There was nothing to preclude plaintiff from asserting that the articles

listed in her amended bill of complaint were omitted from the inventory and were rightfully due her under the will of Kitty Ann Rozycki, deceased.

It is contended that under the will of Kitty Ann Rozycki, the only property that would pass to the remainderman is such property as was not disposed of by the life tenant during his lifetime.

The will of Kitty Ann Rozycki was worded in simple language and provided as follows:

"After all my lawful debts are paid and discharged I give and bequeath unto my husband Stephen Rozycki, all of my property of every kind and nature owned by me at my death, wheresoever situated, if he shall survive me, for and during his natural life. If he should not survive me, then I give and bequeath unto my niece Hannah Rever Weltmer of Pelham, New York, all of my property of every kind and description and wheresoever situate in fee simple. If my husband should survive me, then after his death, I give, devise and bequeath all of said property to my said niece Hannah Rever Weltmer, in fee simple."

This will contained no provisions, express or implied, that the life tenant had power to dispose of any estate in the property greater than that possessed by him, under the terms of the will. In the absence of a power to convey a greater estate, a bill of sale of personal property by a life tenant conveys merely his life estate therein. See Scott v. Fairlie, 81 Fla. 438, 89 So. 128, although the bill of sale purports to be a conveyance of the fee simple absolute title; and the grantee acquired no interest against the remainderman, who is not bound to take any action until the accrual of his cause of action by the termination of the life estate. See 17 R. C. L. 646, Sec. 37 and cases cited. Therefore the bill of sale conveyed to Julian W. Haydon

only the use of the property for the life of Stephen Roz-ycki. The life estate having terminated, the plaintiff re-mainderman is entitled to the property.

It is contended that because Hannah Reber Weltmer did not file her claim as legatee with the county judge, she was barred by the statute of non-claim from participating in the estate.

The statute of non-claim, Sec. 5541, (92) C. G. L., relates to the time within which creditors of the estate must present their claims. A legatee or devisee is not required to file any claim for his legacy or devise in the estate to which he or she is entitled. Redfearn on Wills and Administration of Estates in Florida 437, Sec. 269. This was likewise true before the adoption of the Probate Act. See Sec. 5611 C. G. L. So this contention is without merit.

No reversible error having been made to appear in the final decree below, it is accordingly affirmed.

Affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.